UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

DONNA MARKOCKI, on behalf of herself       :
and all others similarly situated,         :
                                           :
            Plaintiff,                      :
                                           :
        v.                                  :        C.A. No. 06-2422
                                           :
OLD REPUBLIC NATIONAL TITLE                 :
INSURANCE COMPANY,                          :
                                           :        CLASS ACTION
            Defendant.                      :
                                           :

## PLAINTIFF'S REPLY MEMORANDUM OF LAW TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION

Plaintiff Donna Markocki ("Plaintiff"), by counsel, submits this Reply Memorandum of Law to the Opposition to Plaintiff's Amended Motion for Class Certification filed by Defendant Old Republic National Title Insurance Company ("Old Republic" or "Defendant").

Unable to address the overwhelming evidence and case law Plaintiff has assembled in support of certification, Defendant[1] simply ignores it. Old Republic first focuses on jurisdictional arguments which have been *rejected twice in this case by this Court*, and secondarily contends that its systematic failure to charge consumers a discounted rate for title insurance mandated by the law of Pennsylvania is so fraught with unarticulated individualized issues that this case cannot be certified as a class action. This Court and others have already rejected the arguments in Defendant's Opposition (save for one novel argument addressed below) in certifying classes

---

[1]    Third party Defendant Citizens Abstract, Inc. ("Citizens") filed an opposition to Plaintiff's original Motion for Class Certification (since stricken from the record), which largely incorporated the arguments of Old Republic in its original opposition, (which has also been stricken from the record). The only independent argument made by Citizens related to Plaintiff's adequacy to serve as a class representative, because it had not yet been able to take her deposition. Since the filing of Citizens' motions and memoranda, however, the Defendants deposed Ms. Markocki on July 31, 2008. Accordingly, Citizens' concerns are allayed. Plaintiff is an adequate class representative.

1

in numerous actions by aggrieved consumers against title insurers involving essentially identical facts.[2] Those arguments should be rejected here, as well, for the same reasons.

Defendant raises only one new argument in opposition to class certification – namely, that a recent case of the Third Circuit, *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217 (3d. Cir. 2008), somehow precludes certification of Plaintiff's Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL") claim, as set forth in Count IV of the Complaint. *See* Def. Mem. at 21. As discussed below, however, *Hunt* is clearly distinguishable from and inapplicable to this case, and does not support denial of certification of Plaintiff's CPL claim. To the contrary, the facts alleged and developed in this case to date show that each member of the proposed class justifiably relied on Defendant's affirmative, written, deceptive misrepresentations of the legal charges for title insurance. As a result, thousands of Pennsylvania homeowners suffered ascertainable losses of money in the millions of dollars.

## A.  *Hunt* Does Not Control Plaintiff's Motion for Class Certification of her CPL Claim

*Hunt* addressed a CPL claim for deception[3] based on the concealment of anti-competitive behavior which allegedly deceived consumers into believing they were purchasing tobacco products at a price set by an efficient market. 538 F.3d at 219, n. 1. The plaintiff alleged that consumers relied on a presumption they were paying prices set by a competitive market when in

---

[2]    These cases include *Alberton v. Commonwealth Land Title Insurance Co.*, 247 F.R.D. 469 (E.D. Pa. 2008) *recon. den.*, 2008 WL 2945391 (E.D. Pa. July 29, 2008); *Cohen v. Chicago Title Insurance Co.*, 242 F.R.D. 295 (E.D. Pa. 2007); *Slapikas v. First American Title Insurance Co.*, C.A. No. 06-00084, 2008 WL 793919 (W.D. Pa. March 24, 2008); *Randleman v. Fidelity National Title Ins. Co.*, C.A. No. 3:06CV7049, 2008 WL 2323771 (N.D. Ohio June 4, 2008); *Chesner v. Stewart Title Guaranty Company*, C.A. No. 1:06CV00476, 2008 WL 553773 (N.D. Ohio Jan. 23, 2008); *Mitchell-Tracey v. United General Title Insurance Co.*, 237 F.R.D. 551 (D. Md. 2006); *Woods v. Stewart Title Guaranty Company*, 2007 WL 2872219 (D. Md. Sept. 17, 2007), *Cummings v. Stewart Title Guaranty Co, et al.*, March Term 2005, No. 747 (C.P. Phila. Sept. 14, 2006).

[3]    The CPL prohibits "[e]ngaging in any other fraudulent or *deceptive* conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa.C.S.A § 201-2(4)(xxi) (emphasis added).

2

fact the prices were artificially inflated by defendant's anti-competitive and deceptive conduct. *Id.* However, the Third Circuit noted that "Hunt has not explained how the information Smokeless concealed was material to a purchasing decision." 538 F.3d at 228.

These facts are a far cry from the facts in the case at bar. Here, in contrast, the title insurance industry is a regulated industry, bound by the filed title insurance rates set forth in the Rate Manual. The materiality of a title insurer's charging a rate higher than the rate mandated by law is obvious and significant. The Third Circuit's rejection of an attempt to engraft an antitrust claim on to a CPL claim in *Hunt* should have no bearing on Plaintiff's CPL claim in this case.

**B.    Plaintiff Has Properly Alleged Deceptive Conduct in Violation of the CPL, Which Presents a Common Issue**

In this case, Plaintiff alleges that Defendant, with full knowledge of the title insurance rates mandated by law under the Rate Manual (Exhibit A to Complaint) and the fact that Plaintiff was entitled to a discounted rate, misrepresented that the higher rate charged was lawful. Complaint, ¶¶ 26-35, 60-68. Plaintiff attached a copy of the written HUD-1 Settlement Statement setting forth the title insurance charges. *See* Exhibit B to Complaint, attached hereto as Exhibit 1. Defendant's agent signed the HUD-1, certifying that it was a "true and accurate account of this transaction." *See* Exhibit 1 hereto. Ms. Markocki, like all consumers entering into such transactions, signed the HUD-1. Each HUD-1 stated on line 1108 that the title insurance charge was the "true and accurate" cost. In fact, it represented an unlawful mark-up.

"Deception" includes an act or practice that has the capacity or tendency to deceive, whether or not actual deception is shown. *Commonwealth v. Nickel*, 26 D. & C. 3d 115, 120 (C.P. Mercer 1983). The test is the impression the act or practice is likely to make on a person of average intelligence. *Commonwealth v. Foster*, 57 D. & C. 2d 203 (C.P. Allegheny 1972). If particularly

credulous persons are among the audience for an act or practice, the likely effect on them must be considered. *Commonwealth v. Hush-Tone Industries, Inc.*, 4 Pa. Cmwlth 1 (1971).

Here, the uniform act and practice of falsely certifying in a standard form document that the title insurance charge is accurate could only have resulted in actual deception of the Plaintiff and members of the Class.    Plaintiff's claims do not depend on any oral or individualized representations.    The overarching common question is whether Old Republic engaged in "deceptive conduct" for purposes of the section 201-2(4)(xxi) of the CPL when it presented consumers with a written charge for title insurance (appearing on line 1108 of the HUD-1, *see* Exhibit 1) purporting to be correct and lawful under the Rate Manual, when it was marked-up.

In *LaCourse v. Kiesel*, 77 A.2d 877, 879-80 (Pa. 1951), the defendants represented in a printed auction circular that a property was "splendid for apartments which would bring in a handsome income in addition to providing beautiful living quarters for the owner," when in fact a zoning ordinance prohibited apartments on the property.    77 A.2d at 878.    The Supreme Court rejected the argument that the statement was not a material misrepresentation, explaining:

> The language of the circular was equivalent to a statement that there were no legal obstacles in the way of the use of the property being sold for apartments.    Any fair-minded person would naturally assume from the statement . . . that the [zoning] restrictions mentioned did not prohibit such use.

77 A.2d at 879-80.    The court held the sellers' statement was a fraudulent misrepresentation. *Id.*

Similarly here, any "fair-minded person" would rely on the HUD-1 certified by the title agent as charging a legal premium rather than an illegal one. The common thread of reliance is already obvious and explicit from the signatures on the face of the HUD-1.    The common questions presented by Plaintiff's CPL claim can be addressed within the four corners of that standard form document - the *Hunt* tobacco market expectations holding is not to the contrary.

4

**C.    Reliance Can be Presumed Because There is a Confidential and/or Special Relationship Between Class Members and Old Republic**

The law allows a presumption of reliance upon the good faith conduct of a defendant where the parties are in a confidential or special relationship. *See Basile v. H. & R. Block, Inc.*, 777 A.2d 95, 107 (Pa. Super. 2001), citing *Basile v. H. & R. Block, Inc.*, 729 A.2d 574, 584 (Pa. Super. 1999). *See also Katlin v. Tremoglie*, 43 Pa. D. & C. 4th 373, 391 (Phila. C.P. June 29, 1999) ("when a special relationship exists between the parties, certain disclosure obligations are implicit and, thus, reliance is presumed."). *Hunt* acknowledged as much. 538 F.3d at 227 n. 17.

Whether a confidential or special relationship exists is a common question that predominates for Plaintiff's CPL claim. Other federal courts considering identical title insurance cases have concluded that class certification was appropriate so long as the plaintiff can prove the existence of a special relationship based on characteristics inherent to every relationship between purchasers and sellers of title insurance. In *Slapikas v. First Am. Title Ins. Co.*, 2008 WL 793919, *16 (W.D. Pa. March 24, 2008), the court held:

> Plaintiffs allege that a fiduciary relationship exists between the putative class members and First American based upon First American's maintenance of an "overmastering influence" in the title insurance transaction and the reliance by putative class members on First American to calculate and apply the appropriate premium rate. This issue is a common question to all putative class members because the relationship between First American and them is dependant on the standardized forms and procedures utilized by First American and its agents in carrying out the transactions in question and calculating the applicable rate.

*Accord, Alberton v. Commonwealth Land Title Ins. Co.*, 247 F.R.D. at 481.

Significantly, Old Republic's own records reflect that it believes its agents serve in a "fiduciary capacity." *See* Old Republic Review Checklist, bates stamp ORT 1771, attached as Exhibit E to Plaintiff's Reply in Support of Class Certification in *Allen v. Old Republic National Title Ins. Co.*, C.A. No. 06-2454, filed under seal on August 8, 2008.

No categorical formula exists for determining the existence of a "special" or "confidential" relationship. "The concept of a confidential relationship cannot be reduced to a catalogue of specific circumstances, invariably falling to the left or right of a definitional line. *The essence of such a relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other.*"  *In re Scott's Estate*, 455 Pa. 429, 432, 316 A.2d 883, 885 (1974) (emphasis added).  For class certification purposes, this is significant because it renders claims requiring reliance amenable to class treatment.

### D.     Reliance Can be Reasonably Inferred From Common Class-Wide Evidence

Even under *Hunt*, reliance can be inferred. It is beyond belief "that class members eligible for a discount would voluntarily choose to pay a higher rate for the same policy." *Slapikas*, 2008 WL 793919 at *16.  Every consumer reasonably, and justifiably, expects the title insurer, the party with expertise and knowledge of the applicable rates, to charge the rate required by the Rate Manual and Pennsylvania law.  The Defendant's practice of levying illegal premiums for title insurance leads inevitably to consumers paying marked-up premiums.

The circumstances of this case therefore easily meet the holding in *Hunt* that "[t]o bring a private cause of action under the [Consumer Protection Law], a plaintiff must show he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."  538 F.3d at 221, quoting from *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004).  *Hunt* specifically contrasted unproven reliance on market expectations from facts showing reliance in a purchase transaction case, such as this one:

> where a seller deceives a potential purchaser as to the nature, quality or origin of a product, it is easy to understand the purchaser's later claim that the misrepresented information was important to his purchasing decision.  A purchaser of a car, for instance, can plausibly claim that he might not have made the purchase had he known that the car actually had 200,000 miles on it instead of 200 as he was initially told.

*Hunt*, 538 F.3d at 228.

The title insurance class certification cases discussed in Plaintiff's opening brief and listed *supra*, n. 2, anticipated that analysis. For example, Judge Conti, in *Slapikas*, stated:

> [Q]uestions of nondisclosure and reliance can be proven on a class-wide basis through the implausibility that class members eligible for a discount would voluntarily choose to pay a higher rate for the same policy. *See Mitchell-Tracey v. United General Title Ins. Co.*, 237 F.R.D. 551, 557-58 (D. Md. 2006) (stating "it is difficult to comprehend, that a borrower who is made aware of the opportunity to save money knowingly would elect to pay a higher rate and forgo significant savings", citing *In re Coordinated Title Ins. Cases*, 2 Misc. 3d 1007A, 784 N.Y.S.2d 919, 919, *9 (N.Y. Sup. Ct. 2004) ("In logical terms, it is not plausible to think that a consumer, made aware of the opportunity to save hundreds of dollars, would choose to pay the higher rate and forego a savings mandated by law.")).

2008 WL 793919 at *16; see also *Charles v. Lawyers Title Ins. Corp.*, 2007 WL 1959253, *7 (D.N.J. July 3, 2007), citing *In re Coordinated Title Ins. Cases*, 2004 WL 690380, *9 (N.Y. Sup. Ct. Jan. 8, 2004). Judges Robreno and Sánchez also certified identical CPL claims. *Alberton*, 247 F.R.D. at 480-8;[4] *Cohen v. Chicago Title Ins. Co.*, 242 F.R.D. 295 (E.D. Pa. 2007). *See also, Allen v. Holiday Universal, Inc.*, 249 F.R.D. 166, 193 (E.D. Pa. 2008) (relying on *Cohen* and certifying class for CPL claim against health club for uniform overcharging of club members).

The facts in this case common to the Class are sufficient to establish directly and by inference that each Class member justifiably relied on the title agent's signed certification on the HUD-1 that the charges were accurate. *Hunt* did not do away with the use of inferences from common evidence to establish reliance. *In re Resorts, Int'l, Inc.*, 181 F.3d 505, 510 (3d Cir. 1999) ("trial court may infer reliance from the various facts and circumstances of a case.").

---

[4]     While the Third Circuit in *Hunt* included a footnote to the effect that *Alberton* was "mistaken" in holding reliance was not required under the CPL catch-all provision, that observation was limited. *Hunt* did not address the *Alberton* analysis that inferences from common patterns of conduct by a title insurer sufficiently established justifiable reliance in title insurance overcharging cases. 538 F.3d at 226 n. 15.

**E.**    **Conclusion**

For the reasons set forth above, and in her Amended Motion for Class Certification and

Memorandum of Law, Plaintiff respectfully requests her Motion be GRANTED.

Dated:  October 17, 2008                    Respectfully submitted,

                                             DONOVAN SEARLES, LLC

                                             *s/ David A. Searles*
                                             David A. Searles
                                             Michael D. Donovan
                                             1845 Walnut Street, Suite 1100
                                             Philadelphia, PA 19103
                                             (215) 732-6067

                                             Philip S. Friedman
                                             FRIEDMAN LAW OFFICES, PLLC
                                             2401 Pennsylvania Avenue, N.W., Suite 410
                                             Washington, D.C. 20037
                                             (202) 293-4175

                                             Richard S. Gordon
                                             Benjamin H. Carney
                                             QUINN, GORDON & WOLF, CHTD.
                                             102 W. Pennsylvania Ave., Ste 402
                                             Towson, Maryland 21204
                                             (410) 823-2300

## CERTIFICATE OF SERVICE

I hereby certify that on the foregoing was electronically filed on this date and that service

is therefore being made electronically on the following:

David E. Edwards, Esq.
WHITE AND WILLIAMS, LLP
1800 One Liberty Place
Philadelphia, PA 19103

Joel. I. Herzfeld, Esq.
SIMON, RICCHEZZA, SINGER & TURCHI, LLP
1700 Market Street, Suite 3110
Philadelphia, PA 19103

Steven A. Schwartz, Esq.
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041

*s/ David A. Searles*
David A. Searles

Dated: October 17, 2008