IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **DONNA MARKOCKI, on behalf of herself and all others similarly situated,** | : : : | |
| **Plaintiff,** | : : | **CIVIL ACTION** |
| **v.** | : : | **NO. 06-2422** |
| | : : | |
| **OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,** | : : : | |
| **Defendant,** | : : | |
| **v.** | : : | |
| **CITIZENS' ABSTRACT, INC.,** | : : | |
| **Third Party Defendant.** | : | |

## MEMORANDUM AND ORDER

Presently before this Court is Plaintiff's Amended Motion for Class Certification.  For the reasons set forth below, upon consideration of Plaintiff's Motions (Doc. 97), and Defendant's Response thereto (Doc. 100), this Court will grant Plaintiff's Motion.

## BACKGROUND

Plaintiff, Donna Markocki, brings this class action on behalf of Pennsylvania homeowners seeking relief from predatory lending practices of Defendant title insurance company, Old Republic National Title Insurance Company, for violations of statutory and common law obligations.  Compl., ¶ 1.  Plaintiff alleges that Defendant improperly collected excess and unearned premiums in violation of the Real Estate Settlement Procedures Act ("RESPA").

1

A.      The Business of Title Insurance

The purpose of title insurance in a real estate transaction is to insure against losses from past events and to eliminate most risks through the title examination and the settlement process. There are two types of title insurance policies available: an owner's policy, generally purchased by the borrower-homeowner to protect the borrower's property interest, and a lender's policy, generally paid for by the borrower, but purchased for the protection of the lender's security interest in the property.  Alberton v, Commonwealth, 247 F.R.D. 469 (E.D. Pa. 2008) *recon. den.*

While a typical transaction involves the issuance of both types of insurance policies, a refinance transaction involves the issuance of a lender's policy only, paid for by the homeowner. The title agent facilitates the closing and handles the actual closing of the transaction, including paying of the earlier mortgage with new loan proceeds, obtaining releases, providing homeowners with the settlement sheet, or HUD-1, recording documents to update the public record, and issuing the title insurance loan policy.

In Pennsylvania, title insurers typically do not sell title insurance directly to the public, but rather though agents appointed by the insurer under a protocol established by Pennsylvania law.  40 P.S. §§ 910-24, 910-26.  Defendant's title agent, third-party Defendant, Citizens' Abstract, was the appointed agent who handled Plaintiff's transaction.

B.      Statutory Regulation of Title Insurance Premiums

All title insurers are governed by the Pennsylvania Title Insurance Companies Act.  40 P.S. § 910-1 *et seq.*  This statute regulates the business of title insurers, as well as the specific rates insurers may charge for title insurance policies.  The statute requires title insurers to either:

(1) file individual proposed rates with the Insurance Commissioner, 40 P.S. § 910-37(a); or 2) elect to become a member of a rating organization that files proposed rates on behalf of all members of the organization.  During the relevant time period, Defendant elected to file rates through the Title Insurance Rating Bureau of Pennsylvania ("TIRBOP").  Compl., ¶¶ 15-24.  The rates and regulations approved and enacted constitute the Manual of Title Insurance Rating Bureau of Pennsylvania ("Rate Manual").

The Rate Manual provides for three different rate tiers, (1) the Basic Rate; (2) the Reissue Rate, which is 90% of the Basic Rate; and (3) the Refinance Rate, which is 80% of the Reissue Rate, or 72% of the Basic Rate.  The Basic Rate is the default rate charged where neither the Reissue nor Refinance Rate apply.  Both the Reissue and Refinance Rates, are discounted rates which reflect that when only a few years have passed since the issuance of the title insurance policy, there is a reduced risk of title defects and claims against the policy, warranting a lesser amount.

In every transaction in which a title insurance policy is issued, the title agent will first produce a "Title Commitment", or "title binder", which serves to bind the insurer to issue a policy in any particular transaction.  The Title Commitment is prepared by Defendant's appointed agents from standard, computerized forms, and contains the information necessary to determine whether a prior policy exists, calling for the charge of a reissue or refinance rate.  This includes whether the property was purchased or refinanced within the previous ten (10) years, information about any outstanding mortgages, and often the name and address of the borrower.

Once filed, proposed rates enacted by the Insurance Commissioner are mandatory.  Charging any amount other than the approved rates is prohibited by law:

> . . . no title insurance company or agent of a title insurance company shall charge
> any fee for any policy or contract of title insurance except in accordance with
> filings or rates which are in effect for said title insurance company . . . .

40 P.S. § 910-37(h).

      C.      Allegations of Defendant's Excess and Unearned Charges to Plaintiff and the Proposed Class

Plaintiff purchased her home at 3351 Almond Street in Philadelphia, PA in April, 2003, financing her purchase with a mortgage from Countrywide Home Loans Servicing, L.P.  Compl., ¶ 26.  She also purchased a title insurance policy covering the full value of the loan, as the lender required.  Id. at 27.  In November 2005, Plaintiff refinanced her home, with the closing and settlement services provided by Citizens' Abstract.  At that time, Citizens' issued a lender's title insurance policy on behalf of Defendant valued at $123,750.00.  According to line 1108 of the Plaintiff's 2005 HUD-1 Settlement Statement, Defendant charged Plaintiff $978.75, the Basic Rate for this lender's policy.  Yet, Plaintiff alleges that because this refinancing transaction occurred within three (3) years of the date of closing on a previously insured mortgage on the property, she was actually entitled to the Refinance Rate of $704.70, or a 28% discount from the Basic Rate.

Plaintiff asserts that in addition to the required information being listed on the HUD-1 Settlement Statement, that it also appears on the Title Commitment, again substantiating her entitlement to the Refinance Rate.  She further asserts that the class period 2000-2006, was a time of historically low interest rates, with a corresponding increase in refinancing transactions. Plaintiff relies on Housing Studies which indicate that consumers held their mortgage loans an average of two (2) years before refinancing.  JOINT CENTER FOR HOUSING STUDIES OF HARVARD

4

UNIVERSITY, THE STATE OF THE NATION'S HOUSING: 2005, at pp. 6, 33 (2005),

http://www.jchs.harvard.edu/publications/markets/son2005/index.html.  As a result, Plaintiff

contends that ninety (90) percent of the consumers that were charged the Basic Rate were entitled

to a nondiscretionary, discounted premium. According to Plaintiff, rather than charging the

proper premium, Defendant issued a higher premium, and unlawfully retained the difference.

Plaintiff now brings this class action against Defendant, reciting the following causes of

action: violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607, money had

and received, unjust enrichment/accounting/disgorgement/restitution, and violation of

Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

Plaintiff's Proposed Order defines the class as follows:

> All persons or entities in the Commonwealth of Pennsylvania who,
> within ten (10) years of having previously purchased title insurance
> in connection with their mortgage or fee interest, refinanced (during
> six (6) years preceding the filing of the Complaint) the identical
> mortgage or fee interest in a transaction that included the purchase
> of a title insurance policy from Old Republic Title, and who, for that
> subsequent transaction, were charged a title insurance premium by
> Old Republic Title that exceeded the applicable premium discount for
> title insurance in Pennsylvania.  Excluded from the class are officers
> and directors of the Defendant.

## LEGAL STANDARD

Beyond proving the elements of the causes of action recited in the complaint, to proceed

as a class action, the requirements of FED. R. CIV. P. 23 must be satisfied.  According to Rule

23(a), one or more members of a class may sue or be sued as representative parties on behalf of

all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2)

there are questions of law or fact common to the class; (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class; and (4) the representative

parties will fairly and adequately protect the interests of the class.

After satisfying the prerequisites provided in Rule 23(a), parties seeking class

certification must also demonstrate that the action is maintainable under Rule 23(b)(1), (2), or

(3).  Rule 23(b)(1) addresses cases where prosecuting separate actions by or against individual

class members would create a risk of (A) inconsistent judgments or incompatible standards of

conduct for the party opposing the class, or (B) would substantially impair or impede a nonparty

class member's ability to protect their interests.  Rule 23(b)(2) allows class actions where final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Finally, Rule 23(b)(3) permits class actions where the court finds that the questions of law or fact

common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently adjudicating

the controversy.  It also provides a nonexhaustive list of factors courts may consider in

determining predominance and superiority. This list includes (A) the interests of members in the

class in individually controlling the prosecution or defense of separate actions; (B) the extent and

nature of any litigation concerning the controversy already commenced by or against members of

the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the

particular forum; and (D) the difficulties likely to be encountered in the management of a class

action.

## DISCUSSION

In determining whether to certify a class action, a court must weigh the interests of

individuals in conducting separate lawsuits against the practicality of separate actions.  While

individual interests may lean in favor of separate actions, these interest may be more theoretic

than practical, and the amounts at stake for individuals may make separate actions impracticable.

Anchem Products, Inc. et al., v. Windsor, et al., 521 U.S. 591, 616 (1997).  The very purpose of

the class action mechanism is to surmount the obstacle presented by small recoveries, which

serve as a disincentive to prosecute individual actions, by aggregating small potential recoveries

into a large action.  Id. at 617.

　　　　The instant case reflects precisely the situation contemplated by Rule 23.  Potentially

thousands of borrowers received an improper premium rate for title insurance, which would

amount to a small recovery for each borrower.  The potential recovery of a few hundred dollars is

surely outweighed by the overall cost of litigation, making it unlikely that class members would

pursue this action independently.

　　　　After consideration of all the pleadings in this matter, this Court finds that the proposed

class is certifiable, as it meets all the requirements of FED. R. CIV. P. 23.

I.　　　The Requirements of Rule 23(a)

　　A.　　Rule 23(a)(1) - Numerosity

While Rule 23(a) does not provide a precise numerical standard for class certification, it

does require that joinder of all members be impractical, implicating class size.  Plaintiff alleges

that Defendant issued thousands of title insurance policies in Pennsylvania during the relevant

period, and collected premiums in more ninety thousand (90,000) transactions. Pl. Br., p. 17.

Plaintiff concedes that she is currently unaware of which borrowers were entitled to either the

Reissue Rate or the Refinance Rate.  Yet, Plaintiff contends that even if only a small percentage

of the policy purchasers qualify as class members, the claims are still easily too numerous for

joinder.  This Court agrees and concludes that the numerosity requirement is satisfied.

> B.     Rule 23(a)(2) - Commonality

Rule 23(a)(2) requires only a single common question of law or fact in order to certify the

class.  In other words, class certification is appropriate where a common question of law or fact

predominates over individual issues.  Plaintiff proposes several questions of law and fact that she

alleges are common to the class, however, she need only present one such question to satisfy the

commonality requirement.

Plaintiff proposes that one common question is "Whether the Defendant and its agents

systematically collected premiums from Class members in an amount not permitted under the

Rate Manual."  This question is unarguably applicable to all borrowers who purchased policies

during the relevant time period, and clearly satisfies the commonality requirement.

Defendant asserts numerous reasons that Plaintiff's cannot satisfy commonality, in

particular that RESPA has a one year statute of limitations, which may bar some members'

claims, and also that commonality does not exist where a remedy depends on the individual facts

of a claim.  Yet, Defendant's argument is unpersuasive.  "Class relief is consistent with the need

for case-by-case adjudication, especially where it is unlikely that differences in the factual

background of each claim will affect the outcome of the legal issue."  Baby Neal v. Casey, 43

F.3d 48, 57 (1994).  This case presents precisely this situation.  Whether or not each and every

class member of potentially ninety thousand borrowers was charged the correct rate is not the

decisive factor in determining whether Defendant engaged in a continuous and systematic, overall practice of collecting unearned premiums.  Each class member need not have been overcharged to find that this was indeed Defendant's practice.  Rather, it is sufficient that only some of the class members were found to have been overcharged, so long as the number of class members improperly charged remains such that joinder is impracticable as required by Rule 23(a)(1).

Furthermore, even where individual facts and issues are important to the resolution of the matter, class treatment is not precluded.  Baby Neal, 43 F.3d at 57.  "Individual damage determinations can be made at a separate phase of the trial, but the class phase could resolve the central issue of liability. . .," here, Defendant's allegedly deceptive practices.  Id.  Therefore, the requirement of commonality is satisfied, and individual damage determinations can be made at a separate phase of the trial, as proposed in Plaintiff's Trial Plan.  Pl. Br., pp. 33-34.

C.    Rule 23(a)(3) - Typicality

The requirement that the class representatives' claims be typical of the claims or defenses of the class is intended to "ensure that the class representatives' pursuit of their own goals will work to benefit the entire class."  Barnes v. American Tobacco Co., 161 F.3d 127, 141 (3d Cir. 1998).  To show her claims are typical of those of the class, plaintiff must demonstrate that her claim is based upon a series of events and legal theories that are like those of other class members.  Id.  Here, Plaintiff has alleged that Defendant's practices regarding the issuance of the proper insurance rates was fraudulent, and Plaintiff's legal theories involve unjust enrichment, which undoubtedly would be a theory set forth by other class members.

9

Defendant contends that Plaintiff has not submitted sufficient evidence to satisfy the typicality requirement, particularly since the variation among title agents' practices and individual customers' closing experiences makes identifying a "typical" class transaction impossible.  Def. Br., pp. 25-26.  Defendant further argues that Plaintiff's allegations of RESPA and UTPCPL violations are claims applicable only to individuals, not commercial entities, which means that only certain class members could recover under these claims.

However, Plaintiff argues that the typicality requirement is met even where there may be different factual underpinnings of the claims of various class members, such as the size of the loan, the lender, or the location of the insured's property.  Pl. Br., pp. 20-21.  This Court agrees.  "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."  Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992).  Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice.  General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982).  The class representative is simply required to prove that there is a pervasive violation and that the various injuries alleged all stem from that common violation.  Id.

In the present case, Plaintiff alleges that the pervasive violation is the improper rate charged by Defendant, and any injuries asserted by class members will relate directly to this common violation.  Furthermore, the issues surrounding which class members are entitled to recover under RESPA and UTPCPL can be addressed by the organization of subclasses where necessary.  Therefore, Plaintiff has successfully demonstrated that her claim is typical of class

10

members' claims.

### D.     Rule 23(a)(4) - Adequate Representation

Adequacy of representation assures that the named plaintiffs' claims are not antagonistic to the class, and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class.  <u>Baby Neal</u>, 43 F.3d at 55.  Defendant states that adequacy of representation cannot be shown because there are conflicts of interests between Plaintiff and the class members, since individuals refinanced under different requirements and pursuant to different applicable rules in the Rate Manual.  However, this argument in insufficient to preclude a finding of adequate representation.

To find that a plaintiff adequately represents the interests of his or her class, the proposed class representative must 1) have interests substantially aligned with those of the proposed class, and 2) have counsel qualified to serve the interests of all class members.  <u>Georgine v. Anchem Prods. Inc.</u>, 83 F.3d 610 (3d Cir. 1996).  Plaintiff's interests, namely seeking recovery for unearned amounts paid to Defendant, are substantially aligned with those of the proposed class who would also be seeking to recover the same unearned fees.  Further, Plaintiff is represented by competent counsel, experienced in representing class actions involving similar legal theories.  Defendant makes no allegation that Plaintiff's counsel is incompetent, inexperienced, incapable of managing this litigation.  As a result, this Court concludes that Plaintiff has made the requisite showing for adequate representation.

### II.     The Requisites of Rule 23(b)

After satisfying the requirements of Rule 23(a), a plaintiff seeking class certification must

also satisfy any one of three criteria provided in Rule 23(b).  Plaintiff argues that all three criteria

are satisfied in this case.  Conversely, Defendant argues that none of the criteria established in

Rule 23(b) is fully satisfied, which would preclude class certification.

> A.     Rule 23(b)(1)

Rule 23(b)(1) provides that class certification is appropriate under two specific scenarios.

First, a class may be certified where prosecution of separate actions would create a risk of

inconsistent judgments for class members and incompatible standards for the party opposing the

class.  Second, a class may be certified where individual prosecution of separate actions would

create a risk that the rights of members not party to the individual adjudication would be

substantially impaired or would impede nonparty members' ability to protect their interests.

Here, each of Plaintiff's causes of action seeks to enforce duties and obligations owed the

proposed class members in a collective and indivisible fashion.  Indeed, the prosecution of

separate actions could result in incompatible standards of conduct for Defendant, and could

jeopardize the interests of members not party to the individual actions.  "Separate actions would

risk inconsistent verdicts, but adjudication as to one class member would fairly dispose of the

claims of all class members."  Cohen v. Chicago Title Co., 242 F.R.D. 295, 303 (E.D. Pa. 2007).

Therefore, class certification under Rule 23(b)(1) is appropriate.

> B.     Rule 23(b)(2)

According to Rule 23(b)(2), a court may certify a class where the party opposing the class

has acted or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Plaintiff does not exclusively seek monetary damages, and further claims that injunctive

relief is at least equally as important as monetary relief.  Plaintiff alleges that Defendant engaged

in a scheme to cheat and deceive borrowers that resulted in higher title insurance premiums, and

seeks an injunction against such action in the future.  Any remedy provided to the class could

certainly include both money damages and enjoining the conduct in question.  See Cohen, 242

F.R.D. at 301.  As a result, class certification under Rule 23(b)(2) is also appropriate.

           C.     Rule 23(b)(3)

       Finally, Rule 23(b)(3) provides that a class may be certified where the court finds that the

questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is the superior method of adjudication.

       Defendant urges that in order to find a question of law or fact common to all class

members, numerous factual allegations would have to be ignored.  Defendant also argues that

certifying this class action would require this Court to hear testimony from countless borrowers,

hundreds of agents, and hundreds of lenders to determine whether a class member produced

appropriate evidence of prior title insurance.

       However, the central issue in this matter is Defendant's practices in the collection of title

insurance premiums, and whether those practices precluded the proposed class members from

receiving the discounted rates to which they were entitled.  Undoubtedly, this common issue of

law and fact predominates over any individual issues in this case.  Furthermore, "predominance

is a test readily met in certain cases alleging consumer or securities fraud or violations of the

antitrust laws," rendering class certification of this matter under Rule 23(b)(3) appropriate as

13

well.  Anchem, 521 U.S. at 625.

Defendant expresses concerns about the manageability and cost of litigating this class action.  Specifically, Defendant claims that it will be necessary to conduct discovery regarding each individual transaction, and that this Court would be forced to conduct trials of each proposed class member's claims.  Defendant also states that Plaintiff has failed to prove both that Defendant engaged in an industry-wide practice regarding the issuance of improper premiums, and that each proposed class member reasonably relied upon information provided by the respective title agent.

Generally, denying class certification on the sole ground that the purported class is unmanageable is disfavored.  See In re Plastics Additives Antitrust Litigation, 2006 U.S. Dist. LEXIS 69105, at *50 (E.D. Pa. 2006).  Given that Defendant maintains a computer database of agency transactions detailing the policies and premiums charged, identifying class members and administering their claims is by no means impossible.  Pl. Br., p. 30.  Moreover, Defendant will have each proposed class member's HUD-1 and Title Commitment form at their disposal to assist in the determination of whether sufficient evidence of a prior title insurance policy was provided at closing.  Pl. Br., p. 11.  Individualized issues will not preclude class certification in all circumstances, and questions of each class member's reasonable reliance will not serve to preclude class certification here.  "The presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate over questions affecting individual members as required by Rule 23(b)(3) or that the representative's claims are not typical."  Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985).  "The proper approach to the problem of reliance is to analyze the plaintiff's allegations, in light of the likely

14

proof at trial, and determine the most reasonable placement of the burden of proof of reliance."
Newton v. Merrill Lynch, 259 F.3d 154, 175 (3d Cir. 2001) (citing Sharp v. Coopers & Lybrand,
649 F.2d 175, 188 (3d Cir. 1981).

In the present case, Plaintiff has alleged that Defendant provided no training or oversight
to its title agents to assure that borrowers were charged the proper rates.  Pl.'s Br., p. 7.  Contrary
to Defendant's assertions, this does support allegations of an industry-wide practice, and bears
directly on Defendant's liability.  Furthermore, this Court agrees with Plaintiff's assertion that
"every consumer reasonably, and justifiably, expects the title insurer, the party with expertise and
knowledge of the applicable rates, to charge the rate required by the Rate Manual and
Pennsylvania law."  Pl.'s Rep., p. 6.

Moreover, upon review of Plaintiff's allegations, this Court concludes that the proposed
class is entitled to a presumption of class-wide reliance which Defendant may rebut.  Presuming
reliance class-wide is proper when the material nondisclosure is part of a common course of
conduct.  Hoxworth, 980 F.2d at 924.  Here, the common course of conduct is the alleged
industry-wide practice of providing no training or oversight to title agents, which aided in
Defendant unlawfully profiting from improper premiums.

Although Defendant presents numerous issues which will likely make litigation of this
matter complex, these issues do not render the task insurmountable.  Because the requirements of
Rule 23(a) and (b) are satisfied, this Court will grant Plaintiff's Amended Motion for Class
Certification.

An appropriate order follows.

15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNA MARKOCKI, on behalf of herself** | : | |
| **and all others similarly situated,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  06-2422** |
| | : | |
| | : | |
| **OLD REPUBLIC NATIONAL TITLE** | : | |
| **INSURANCE COMPANY,** | : | |
| **Defendant,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITIZENS' ABSTRACT, INC.,** | : | |
| **Third Party Defendant.** | : | |

**ORDER**

    **AND NOW**, this ___ of December, 2008, upon consideration of Plaintiff's Amended

Motion for Class Certification (Doc. 97) and Defendant's Response thereto (Doc. 100), **IT IS**

**HEREBY ORDERED AND DECREED** that Plaintiff's Motion is **GRANTED**.

    **IT IS FURTHER ORDERED** that this action shall be maintained as a class action in

accordance with Fed. R. Civ. P. 23 pursuant to the following findings of fact:

    1.    The "Class," defined as "All persons or entities in the Commonwealth of

        Pennsylvania who, within 10 years of having previously purchased title

        insurance in connection with their mortgage or fee interest, refinanced

        (during the six years preceding the filing of the Complaint) the identical

        mortgage or fee interest in a transaction that included the purchase of a

16

title insurance policy from Old Republic Title that exceeded the applicable
premium discount for title insurance in Pennsylvania," is so numerous that
joinder of all members is impracticable under Rule 23(a)(1);

2.    There are questions of law and/or fact common to the Class under Rule
23(a)(2), including but not limited to the following questions:

        (a)    Whether the Defendant and its agents systematically
collected premiums from Class members in amounts not
permitted under the Rate Manual;

        (b)    Whether by filing their discounted rates with the
Commonwealth of Pennsylvania, the Defendant is offering
insurance at a certain price and that the Class is entitled to
receive that price;

        (c)    Whether the Defendant's protocols, guidelines, and
oversight of its agents precluded the Class from receiving
the discounted, filed rates to which they were entitled;

        (d)    Whether the Defendant uniformly applied the discounted
rates pursuant to the terms of filed rates;

        (e)    Whether the Defendant and its agents intentionally and/or
negligently omitted to disclose material facts to the Plaintiff
and the Class that they need only pay the discounted
premiums for the reissuance of title insurance on the
refinancing of their mortgages or fee interests;

17

(f)     Whether the Defendant and its agents were unjustly

enriched by their improper conduct;

(g)     Whether the Defendant and its agents should be enjoined

from further engaging in such improper conduct;

(h)     Whether the Plaintiff and members of the Class have

suffered an ascertainable loss that is the result of the

Defendant's misconduct and unfair and deceptive business

practices; and

(i)     Whether Plaintiff and members of the Class have sustained

damages and the proper measure of such damages.

3.     The claims of Plaintiff Donna Markocki are typical of the claims of the

Class under Rule 23(a)(3);

4.     Plaintiff will fairly and adequately protect the interests of the Class

pursuant to Rule 23(a)(4);

5.     Under Rule 23(b)(1)(A), the prosecution of separate actions by individual

members of the Class would create a risk of inconsistent or varying

adjudications with respect to individual members of the Class which

would confront the defendant with incompatible standards of conduct; and

under Rule 23(b)(1)(B) adjudications with respect to individual members

of the Class would as a practical matter be dispositive of the interests of

other members not parties to the adjudications or would substantially

impair or impede their ability to protect their interests;

6.      Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final equitable or declaratory relief appropriate with respect to the Class under Rule 23(b)(2);

7.      The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members under Rule 23(b)(3), and a class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

   (a)      There is no interest in individual members of the Class in individually controlling the prosecution or defense of separate actions as the amount which may be recovered by individual Class members will be small in relation to the expense and effort of administering the class action;

   (b)      There is no suggestion that there is any other pending litigation concerning this controversy already commenced by or against members of the Class;

   (c)      This Court is an appropriate forum for the litigation of the claims of the Class; and

   (d)      There are no difficulties likely to be encountered in the management of the action as a class action.

**IT IS FURTHER ORDERED** that Plaintiff Donna Markocki is certified as Class Representative.

**IT IS FURTHER ORDERED** that Richard S. Gordon of the firm Quinn, Gordon & Wolf, Chtd. is appointed as Lead Class Counsel; and Philip S. Friedman of the firm Friedman Law Offices, PLLC, and David A. Searles and Michael D. Donovan of the firm of Donovan Searles, LLC are also appointed as Class Counsel.

**IT IS FURTHER ORDERED** that excluded from the Class are all officers and directors of the Defendant.

**IT IS FURTHER ORDERED** that Plaintiff shall submit a proposed form of notice to the Class on or before **Monday, January 12, 2009**.


**BY THE COURT:**

**/s/ Petrese B. Tucker**

**_____**

**Hon. Petrese B. Tucker, U.S.D.J.**

20