## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONNA MARKOCKI, on behalf of herself and all others similarly situated,** | : | |
| | : | |
| **Plaintiff,** | : | **C.A. No. 06-2422** |
| v. | : | |
| | : | |
| **OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY** | : | **CLASS ACTION** |
| | : | |
| **Defendant** | : | |

### PLAINTIFFS' PROPOSAL CONCERNING
### PROPOSED FORM OF NOTICE TO THE CLASS

On December 9, 2008, this Court certified this case as a class action against Defendant

Old Republic National Title Insurance Company ("Old Republic") on behalf of the following

Class:

> All persons or entities in the Commonwealth of Pennsylvania who, within 10
> years of having previously purchased title insurance in connection with their
> mortgage or fee interest, refinanced (during the six years preceding the filing of
> the Complaint) the identical mortgage or fee interest in a transaction that included
> the purchase of a title insurance policy from Old Republic Title that exceeded the
> applicable premium discount for title insurance in Pennsylvania.

*Markocki v. Old Republic National Title Insurance Company*, --- F.R.D. ---, 2008 WL 5159252,

*8 (E.D. Pa. Dec. 9, 2008).

In its Order certifying the class, the Court Ordered that "plaintiff shall submit a proposed

form of notice … on or before **Monday, January 12, 2009**." 2008 WL 5159252 at *10

(emphasis in original). As set forth below, Plaintiff and the Class' proposal on notice in this

case is informed by counsels' recent work in another reissue rate case in this Court, *Cohen v.*

*Chicago Title Insurance Company*, C.A. No. 06-873, class certification decision reported at 242

F.R.D. 295 (E.D. Pa. 2007) (Sánchez, J.).

I.    **BACKGROUND**

In each of the reissue rate class actions around the United States (this case is one of approximately thirty pending nationwide), the defendant title insurers have consistently claimed that they do not have any computer records or other electronic data on the policies that that they have issued or the premiums collected.  Old Republic in this case is no different.  Although the evidence in this case indicates that the computer information necessary to compile the Class list is maintained by Old Republic – *see e.g.* Agency Administration Manual: Database and Journal Voucher System, Bate No. 1778 (attached as Exhibit K to Plaintiff's Amended Motion for Class Certification (Doc. 98)) – Old Republic has denied having sufficient electronically stored information to identify class members.  *See e.g.,* Defendant Old Republic's Opposition to Plaintiff's Amended Motion for Class Certification at 18 (Doc. 100).

A.    **Plaintiffs' Counsels' Experience in Compiling a List of Potential Class Members for Purposes of Sending Notice in *Cohen v. Chicago Title***

Faced with this same argument in *Cohen v. Chicago Title*, the undersigned counsel undertook a protocol, under the direction and instruction of Judge Sánchez, to determine whether all of the data and information and information necessary to compile a class list could be obtained from Chicago Title's title agents.  The answer is a resounding yes.

Here's how it unfolded.    Although Chicago Title remained adamant that it did not maintain any personally identifiable data concerning title policies underwritten by its agents in the Commonwealth of Pennsylvania, Chicago Title agreed to undertake a different protocol for the production of the Class' data.  In particular, Chicago Title agreed that a "test" agent would make its electronic data available to a third party software vendor, Title Software Services ("TSS"), the publisher of "Title Express," one of the most widely used "off the shelf" title agent

programs available in the title insurance industry.[1] TSS, in turn, would import the data, sort it and provide plaintiffs with accurate information and data about each Class member's transaction. As part of this protocol, Chicago Title agreed to assist plaintiffs in choosing a "test" agent, and further agreed to facilitate the agents' cooperation. For its part, TSS agreed to serve as a consultant and run a test of the database for the parties.

When the parties got bogged down in the details of how and under what circumstances the "test" agent would produce its data, Judge Sánchez, by Order dated September 12, 2008 (Doc. 65 in *Cohen v. Chicago Title*), ordered that Chicago Title facilitate the production of ***an exact electronic copy*** of the "test" agent's database to permit plaintiff to run a "test program" on the files.

Not surprisingly, after the issuance of Judge Sánchez's Order, TSS advised, without explanation, that it would ***not*** agree to serve as a consultant, and consequently, would not run test reports on Chicago Title's "test" agent's database.

Rather than give up on the protocol, counsel in *Cohen v. Chicago Title* instead turned to a nationally recognized computer consultant, Array Technology, whose IT personnel have served as ESI consultants in several notable actions, including the landmark case *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004). Array Technology's IT personnel inspected and began working with the "test" agent's database shortly after counsel received it. They not only were able to extract the data from the database but also imported the data into a usable format and sorted it. Although the process of understanding and organizing the data in the "test" agent's database was laborious and time intensive, the results were significant – Array

---

[1]    Although there does not appear to be any empirical data or formal studies, counsel's experience in these reissue cases in Pennsylvania leads us to believe that Title Express is the most commonly used computer program used by title agents in Pennsylvania.

Technology was able to compile a proposed class list from the "test" agent's raw data fields sufficient to send notice to the Class in *Cohen v. Chicago Title*.

As important, Array Technology reports that the protocol used in respect of the "test" agent's database in *Cohen v. Chicago Title* can be replicated with relative ease not only for all of Chicago Title's agents, ***but for any agent of any title insurer in Pennsylvania***. The process for obtaining the exact copies of the agents' databases may be even easier than ever expected. As counsel have learned through this process, TSS (and likely all title software vendors) requires its users to make a backup the Title Express database on a regular basis, and even provide a protocol for doing so that is both easy to follow and inexpensive. Indeed, all of the data that Plaintiff requires is contained in a single folder within Title Express designated as the "OM Folder." *See* "How to Backup TitleExpress" (**Exhibit A** hereto).[2] The "OM Folder" is fully capable of "drag and drop" copying, *id.*, a methodology that is well known to even those with even the most basic computer knowledge.

**B.    The Discovery in this Case is Consistent with Counsel's Experience with the Data of the "Test" Agent in *Cohen v. Chicago Title***

As noted, the protocol designed by Array Technology in *Cohen v. Chicago Title* to compile the class list from an exact copy of the title agent's database is applicable to this case. The evidence in this case is also strikingly similar to that in *Cohen v. Chicago Title*.

As the Court is aware, in connection with briefing on class certification in this case, Gregory Prosmushkin, President of Citizen's Abstract, LLC, Old Republic's title agent in Ms. Markocki's transaction, submitted a Declaration (attached hereto as **Exhibit B**) outlining the scope and availability of Citizen Abstract's database. In his Declaration, Old Republic's own

---

[2]    TSS own instruction sheet – Exhibit A, "How to Backup TitleExpress" – also identifies a "TSS Folder" (which contains configuration files) that end users must back-up. For purposes of accomplishing a data copy, however, Plaintiffs need only a copy of the data files contained in the "OM Folder."

agent confirms that it maintains computer records of title insurance policies issued which includes such information as the purchase dates of property, purchase amounts and information regarding prior mortgages. According to Mr. Prosmushkin, consistent with what counsel learned in *Cohen v. Chicago Title*, all of the data can be sorted through computer generated reports:

> 7.     During the time that Citizen's Abstract was an appointed agent for Old Republic, it used Title Express, which is one of the "off the shelf" title agent programs available in the title insurance industry. As part of Citizen's Abstract's standard protocol, Citizen's Abstract would enter data from the title abstract into Title Express. The information inputted typically included the name and address of the consumer either purchasing the property or taking out the loan. It also included significant information concerning the purchase dates of the property (as well as purchase amounts) and information regarding prior mortgages. It is my understanding that once this information was inputted into Title Express, the information is stored in Citizen's Abstract's computer system.

> 8.     The information inputted concerning each title transaction, would then be printed out on the appropriate Old Republic forms used to process and close the loan and issue the title insurance policy. ***It is my understanding that information concerning consumers whose transactions included an Old Republic title insurance policy are still available in Citizen's Abstract's computer system and can, through Title Express, be accessed at any time***.

Exhibit B; Prosmushkin Dec. at ¶¶ 7-8 (emphasis added).

Mr. Prosmushkin's testimony was not weaved out of whole cloth. It is completely consistent with the requirements of Old Republic's standard Agency Agreement (attached as Exhibit H to Plaintiff's Memorandum of Law in Support of Amended Motion For Class Certification, filed under seal, Doc. 98) ***which explicitly requires all Old Republic agents in Pennsylvania*** to "[m]aintain and preserve, in a separate file on each order for title insurance placed with Agent, a copy of the title insurance forms issued in that transaction, and all supporting documents on which the determination of insurability is made, including, but not limited to, affidavits, lien waivers, survey plats, searches, examinations and work sheets." Agency Agreement at III (b). Moreover, each Agent is required to "lend all reasonable

assistance to [Old Republic] in investigating, adjusting or contesting" claims, and to "make any file documents necessary to administer such claim available to [Old Republic]. *Id.* at IX. Notably, Old Republic's right of access to such documents and materials is "unrestricted" even upon termination of the Agreement. *Id.* at XII (D).

Not only do Old Republic's agents maintain all of the data that is necessary to compile the Class list in this case,[3] but that data can also be sorted and filtered to create customized reports. As Mr. Prosmushkin noted:

> It is also my understanding that Title Express can compile reports and other information and data concerning each Old Republic transaction. It is further my understanding that data concerning Citizen's Abstract's customers can be sorted for purposed of producing a customized report – i.e. a report which contains specific information and/or fields of information about each transaction. To the best of my understanding, this is true with respect to virtually all of the "off the shelf" title agent programs.

Exhibit B; Prosmushkin Dec. at ¶ 9. Following the successful work of counsel, as described above, we know that such reports can be generated from the data of any of the "off the shelf" title agent programs and without regard to the availability of the program.

## II.    PROPOSED PLAN FOR COMPILING PROPOSED CLASS LIST AND DISSEMINATING NOTICE TO THE CLASS

### A.    Timetable for Production of Data by All Old Republic Agents in Pennsylvania

The "test program" run on the "test" agent's database in *Cohen v. Chicago Title* is consistent with the discovery in this case, and demonstrates that the data necessary to compile a list of Class members (as well as class damages) for purposes of effecting individualized notice is, at a minimum, captured by each of Old Republic's Pennsylvania agents.    Accordingly, in order to provide the best notice practicable under the circumstances, including notice to those

---

[3]    The very same data that identifies the members of the Class can also be used to identify the Class' damages in this case, and will, in any event, have to be produced in connection with Rule 26 discovery proceedings.

persons that can be individually identified through reasonable efforts, Fed. R. Civ. P. 23(c)(2), Plaintiffs propose the following timetable, mindful of the fact that Old Republic has represented in its opposition to class certification that it has over 200 agents[4] who conduct settlement services in the Commonwealth of Pennsylvania:

1.    Plaintiffs propose that this Court order Old Republic to produce an exact electronic copy of each of their Pennsylvania agents' databases in a readable electronic format **within 30 days** of the Court's Order approving this proposed plan.

2.    Plaintiffs, through their IT consultants, will compile a complete list of potential Class members within **60 days** of Old Republic's production of the databases.

3.    Plaintiffs shall prepare the proposed form of notice for mailing ("Mailed Notice"), a copy of which is attached hereto as **Exhibit C**, which complies with Fed.R.Civ.P. 23 and due process.  Within **30 days** of the Plaintiffs' compilation of a complete list of potential Class members, Plaintiffs propose that the Mailed Notice be sent to all potential Class members who are identified under the protocol described above.

4.    Within **15 days** of mailing the Mailed Notice, Plaintiffs' counsel will cause to be filed with the Clerk of the Court, and served upon opposing counsel, affidavits or declarations of the person or persons under whose general direction the mailing of the Notice was made, showing that such mailing has been made in accordance with this protocol.

---

[4]    *See* Defendant's Opposition to Plaintiff's Amended Motion for Class Certification at 3 (Doc. 100).

**B.**    **Plaintiffs Alternatively Propose Notice By Publication at This Time**

Because Plaintiffs are also mindful of the extended time frame for disseminating Mailed Notice to the Class, Plaintiffs propose the following alternative protocol for published notice. As discussed below, even though the Defendant must ultimately produce an exact electronic copy of each of Old Republic's Pennsylvania agents' databases to determine the actual damages in this case, let alone produce such information for notice to the class, Plaintiffs propose a more expedited Notice by Publication, particularly in light of the simple fact that notice in this case is not necessary at all.

This Court certified the case as a class action under Rule 23(b)(1), (b)(2) and (b)(3). When a case is certified under either Rule 23(b)(1) or (b)(2), there is no notice requirement to individual members of the Class. *See* Rule 23(c)(2); MANUAL OF COMPLEX LITIGATION § 21.311 (4th ed. 2004) (individual notice not required under Rule 23(b)(2) because there is no right of exclusion); 1 NEWBERG ON CLASS ACTIONS, § 4.20 (4th ed. 2002) (stating that there is "no mandatory notice to individual class members of the pendency of a class action in actions certified under Rule 23(b)(1) or (b)(2), and class members in subdivision (b)(1) or (b)(2) class actions do not have the right to opt out of a class action prior to judgment on the merits."); 7B Wright & Miller, FED. PRAC. & PROC. CIV. 3d § 1793 (3d ed. 2007) (same); *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 681 (D. Kan. 1991); *Kyriazi v. Western Elec. Co.*, 647 F.2d 388, 393 (3d Cir. 1981) (all class members in a Rule 23(b)(2) class are mandatory members and have no opt-out rights).

As noted in *In Re A. H. Robbins Co., Inc.*, 880 F.2d 709, 728 (4th Cir.), *cert. denied*, 493 U.S. 959 (1989), *abrogated in part by Amchem Products, Inc. v. George Windsor, et al.*, 521 U.S. 591 (1997), when a class is certified under Rule 23(b)(1) and/or (b)(2), and also (b)(3), the court should proceed under (b)(1) or (b)(2) "so that the judgment will have *res judicata* effect as to all the class (since no member has the right to opt out in a (b)(1) or (b)(2) suit), thereby furthering policy underlying (b)(1) and (b)(2) class suits." *See* 3B Moore's Federal Practice, § 23.31[3] at 236-7 (2d ed. 1987); *Mungin v. Florida E. Coast*

*Ry.*, 318 F. Supp. 720, 730 (M.D. Fla. 1970), *aff'd per curiam*, 441 F.2d 728 (5th Cir. 1971) (stating that where class can be certified under Rule 23(b)(2) and (b)(3), claim should be treated as (b)(2) claim to avoid a "multiplicity of suits" and to "provide common binding adjudications"). Accordingly, because this case was certified as a Rule 23(b)(1), (b)(2) and (b)(3) class, individual notice may not even be required.

To protect the rights of the class and to satisfy any potential due process concerns, Plaintiff proposes that it is appropriate, in the alternative, to provide notice by posting or publication in the form attached hereto as **Exhibit D**. As part of this notice process, Plaintiff also proposes establishing an internet website (reserved under www.titleinsuranceratelitigation.com) on which all relevant court pleadings will be posted for Class members to view over the internet. *See* MANUAL FOR COMPLEX LITIGATION § 21.311 at 288.

### C.    Timetable for Notice and Specific Publications Proposed

Thus, rather than the extended notice program described in Part A, Plaintiff proposes in the alternative that **within thirty (30) days** from the date the Court approves Notice in the form attached hereto as **Exhibit D**, Plaintiff will post the proposed Notice on the website www.titleinsuranceratelitigation.com, where it will remain posted throughout the duration of this matter with all other relevant pleadings.

Furthermore, **within thirty (30) days** from the date the Court approves Notice in the form attached hereto as **Exhibit D**, Plaintiff will publish the summary notice in two consecutive editions of the following large circulation newspapers within the Commonwealth of

Pennsylvania:  The Philadelphia Inquirer, Pittsburgh Post-Gazette, Erie Times-News, Harrisburg

Patriot-News and Scranton Times Tribune.

Dated: January 9, 2009                    Respectfully submitted,

                             BY:    *s/ David A. Searles*
                                    David A. Searles
                                    DONOVAN SEARLES, LLC
                                    1845 Walnut Street, Suite 1100
                                    Philadelphia, PA  19103
                                    (215) 732-6067

                                    Richard S. Gordon
                                    Benjamin H. Carney
                                    QUINN, GORDON & WOLF, CHTD.
                                    102 W. Pennsylvania Ave., Ste. 402
                                    Towson, Maryland  21204
                                    (410) 825-2300

                                    Philip S. Friedman
                                    FRIEDMAN LAW OFFICES, PLLC
                                    2401 Pennsylvania Avenue, N.W., Suite 410
                                    Washington, DC  20037
                                    (202) 293-4175

                                    *Class Counsel*

# EXHIBIT A



*Close with latitude.*

# How to Back Up TitleExpress

You must routinely back up TitleExpress files. A backup is a copy of the files stored separately from the original files. The backup copy can be used to recover the original files if they are damaged or destroyed.

To back up TitleExpress files, all users must be logged out of TitleExpress. This ensures no files will be locked during the backup process.

*Note: Typically, no services must be stopped in order to perform the back up.*

TitleExpress files are stored on the stand-alone workstation, workgroup host, or server computer.

TitleExpress files consist of the database files and the configuration files for add-on products, such as iOrderExpress and the Document Manager. Both types of TitleExpress files must be backed up to ensure a successful and complete back up.

## What to Back Up

*Note: Locations of TitleExpress files vary. Contact your System Administrator for more details.*

Backing up TitleExpress consists of copying the OM folder and the TSS folder. The OM folder contains the database files. The TSS folder contains the configuration files.

Following are the default locations of these folders on the stand-alone workstation, workgroup host, or server computer:
- The OM folder is located in a shared folder, e.g., C:\TSS
- The TSS folder is located in the C:\Program Files folder

## General Guidelines

It is highly recommended you back up TitleExpress files on a nightly basis since information is added and edited daily.

Following are suggested methods that may be used to perform the back up:
- Copy files to a removable device, such as a USB thumb-drive
- Back up files on a tape drive
- Burn files to a CD-ROM or DVD
- Copy files to another workstation

Any method used to back up TitleExpress files is acceptable as long as the appropriate files are copied. It is highly recommended you perform a test restore to verify the backed up files.

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

DONNA MARKOCKI, on behalf of herself
and all others similarly situated,

             Plaintiff,

                v.

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,

             Defendant.

C.A. No. 06-2422

CLASS ACTION

## DECLARATION OF GREGORY PROSMUSHKIN

I, Gregory Prosmushkin, submit this unsworn Declaration under penalty pursuant to 28 U.S.C. § 1746 and state as follows:

1     I am the President of Citizen's Abstract, LLC, a title agent located in Southampton, Pennsylvania. From roughly November 2003 until May 2007, Citizen's Abstract was appointed as a title insurance agent in Pennsylvania for Old Republic National Title Insurance Company ("Old Republic")

2     On or about November 4, 2003, Citizen's Abstract entered into an Agreement for Appointment of Policy Issuing Agent ("Agency Agreement") with Old Republic. As part of Citizen's Abstract's duties and responsibilities under the Agency Agreement, Citizen's Abstract was responsible, on behalf of Old Republic, for collecting premiums, fees and charges attributable to the issuance of title insurance to consumers in Pennsylvania.

3     When Citizen's Abstract became an appointed agent for Old Republic, Old Republic provided very little training or oversight into its operations and procedures. For example, though Old Republic provided us with a copy of its "Agent Manual," Old Republic provided no training with respect to the procedures for determining the correct rates to be

charged to consumers, such as the reissue rate and the refinance rate. Both the reissue rate and refinance rates are available to consumers by virtue of the TIRBOP Manual in force in Pennsylvania.

4.    I am not aware of any additional training that Old Republic provided or offered to any of its other new agents.

5.    Once Citizen's Abstract became an agent of Old Republic, Old Republic provided very little oversight with respect to applicable title insurance rates charged to consumers. Although, from time-to-time Citizen's Abstract was audited by Old Republic, the audits did not, to the best of my knowledge, review whether Citizen's Abstract was properly applying the reissue rate or the refinance rate in connection with consumer transactions. It was my observation, during the audits, that Old Republic was mostly interested in our escrow accounts and also whether Citizen's Abstract had properly calculated Old Republic "net premium" – that is, the portion of each premium collected that needed to be remitted to Old Republic.

6.    Following the institution of this lawsuit, I reviewed the file of the Named Plaintiff, Donna Markocki. Ms. Markocki's file contains the same standard forms and documents that one would expect to find in any Citizen's Abstract closing file. I found nothing unusual about Ms Markocki's file and found it to be typical of any other consumer file closed by Citizen's Abstract, in which an Old Republic title insurance policy issued.

7    During the time that Citizen's Abstract was an appointed agent for Old Republic, it used Title Express, which is one of the "off the shelf" title agent programs available in the title insurance industry  As part of Citizen's Abstract's standard protocol, Citizen's Abstract would enter data from the title abstract into Title Express. The information inputted typically included the name and address of the consumer either purchasing the property or taking out the loan  It

2

also included significant information concerning the purchase dates of the property (as well as purchase amounts) and information regarding prior mortgages. It is my understanding that once this information was inputted into Title Express, the information is stored in Citizen's Abstract's computer system.

8.    The information inputted concerning each title transaction, would then be printed out on the appropriate Old Republic forms used to process and close the loan and issue the title insurance policy. It is my understanding that information concerning consumers whose transactions included an Old Republic title insurance policy are still available in Citizen's Abstract's computer system and can, through Title Express, be accessed at any time

9.    It is also my understanding that Title Express can compile reports and other information and data concerning each Old Republic transaction. It is further my understanding that data concerning Citizen's Abstract's customers can be sorted for purposed of producing a customized report – i.e. a report which contains specific information and/or fields of information about each transaction. To the best of my understanding, this is true with respect to virtually all of the "off the shelf" title agent programs.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of _____, 2008

Gregory Prosmushkin

4/30/08

Anna D. Volk

NOTARIAL SEAL
ANNA D. VOLK, Notary Public
City of Philadelphia, Phila. County
My Commission Expires July 28, 2009

3

# EXHIBIT C

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DONNA MARKOCKI, on behalf of herself and all others similarly situated,** | : |
| | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :    **C.A. No. 06-2422** |
| | : |
| **OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,** | : |
| | : |
| | :    **CLASS ACTION** |
| **Defendant.** | : |
| | : |

## NOTICE OF PENDENCY OF CLASS ACTION

**TO:** All persons or entities in the Commonwealth of Pennsylvania who within 10 years of having previously purchased title insurance in connection with their mortgages or fee interests, refinanced the identical mortgage or fee interest, and were charged a title insurance premium by Old Republic National Title Insurance Company that did not include the applicable premium discount for title insurance on file with the Pennsylvania Insurance Commissioner (the "Class"), but not including any officers and directors of the Defendant, who are excluded from the Class.

*A Court authorized this notice. This is not a solicitation from a lawyer.*

Donna Markocki has sued Old Republic National Title Insurance Company (Old Republic or Defendant), alleging that the Defendant systematically charged Pennsylvania consumers who refinance their mortgages premiums for title insurance that are far in excess of the rates permitted under Pennsylvania law. Defendant maintains its actions did not violate the law.

- The Court has the allowed the lawsuit to proceed as a class action on behalf of all persons or entities in the Commonwealth of Pennsylvania who within 10 years of having previously purchased title insurance in connection with their mortgages or fee interests, refinanced the identical mortgage or fee interest, and were charged a title insurance premium by Old Republic that did not include the applicable premium discount for title insurance on file with the Pennsylvania Insurance Commissioner.

- The Court has not decided whether Old Republic did anything wrong. There is no money available now, and no guarantee that there will be money available in the future. However, your legal rights are affected, and you have a choice to make now.

Draft Long Form Notice
Exhibit B
Page 2 of 7

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT

| DO NOTHING | **Stay in this lawsuit. Await the Outcome. Give up certain rights.**<br><br>By doing nothing, you keep the possibility of getting money or benefits that may come from a trial or a settlement. But, you give up any rights to sue Old Republic individually for the same legal claims that are in this lawsuit. |
|---|---|
| ASK TO BE EXCLUDED | **Remove yourself from this class action. Get no benefits or money. Keep certain rights.**<br><br>If you ask to be excluded and money or benefits are awarded later, you will not share in such recovery. But, you keep any rights you may have to sue Old Republic separately about the same legal claims that are in this lawsuit. |

- Your options are explained in this notice. To ask to be excluded, you must act before _____, 2009.

- Lawyers must prove the claims against Old Republic at trial. If money or benefits are obtained from Old Republic, you will be notified about how to obtain your share.

- Any questions? Read on and/or visit www._____.com

## BASIC INFORMATION

### 1. Why did I get this notice?

Records provided by Old Republic and/or its agents, show that when you refinanced your mortgage you obtained title insurance from Old Republic for your benefit or the benefit of your lender. This notice explains that the Court has allowed, or "certified," a class action lawsuit that may affect you. You have legal rights and options that you may exercise before the Court holds a trial. The trial is to decide whether the claims being made against Old Republic, on your behalf, are correct. Judge Petrese B. Tucker of the United States District Court for the Eastern District of Pennsylvania is overseeing this class action. The lawsuit is known as *Markocki v. Old Republic National Title Insurance Co.*, Civil Action No. 06-2422 (E.D. Pa).

### 2. What is this lawsuit about?

The title insurance industry issues two kinds of policies: owner's policies and lender's policies. An owner's policy protects the buyer from clouds on the title for as long as she owns the property; a lender's policy protects the lender against a challenge to the borrower's title and remains in place only as long as the mortgage remains on record. At settlement for the purchase of real property in Pennsylvania, a buyer typically buys both owner's and lender's insurance

Draft Long Form Notice
Exhibit B
Page 3 of 7

policies. When a property owner refinances her mortgage, the borrower buys only a new lender's insurance policy. Lender's policies are paid for by the borrower, but are held by and for the benefit of the lending institution.

This litigation was commenced with a Complaint dated June 9, 2006. The Complaint alleges, in relevant part, that Old Republic failed to give borrowers in residential mortgage transactions the benefit of a discounted rate for title insurance policies under its rates on file with the Pennsylvania Insurance Commissioner. The plaintiff contends that when Old Republic prepared title commitments and HUD-1 Settlement Statements in residential mortgage transactions, the discovery of a prior, unpaid mortgage loan from an institutional lender necessarily meant that prior title insurance had been issued with respect to the prior mortgage and, therefore, entitled the borrower to receive the benefit of a discounted rate for title insurance.

### 3.  What is a class action and who is involved?

In a class action lawsuit, one or more people called the "Class Representative," in this case Donna Markocki, sue on behalf of other people who have similar claims. All of the people together are called a "Class" or "Class Members." Ms. Markocki is also called the Plaintiff and the Class Representative and she is pursuing claims on behalf of the Class. The title insurance company she sued, in this case Old Republic, is called the Defendant. One court resolves the issues for everyone in the Class, except for those people who choose to exclude themselves from the Class.

### 4.  Why is this lawsuit a class action?

The Court decided that this lawsuit can be a class action and move towards a trial because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court found that:

•   There are potentially thousands of persons in the Commonwealth of Pennsylvania who purchased title insurance at the basic rate without receiving any reissue or refinance rate for title insurance.

•   There are legal questions and facts that are common to each of them;

•   The claims of Plaintiff Donna Markocki are typical of the claims of the rest of the Class;

•   Ms. Markocki and the attorneys representing the Class will fairly and adequately represent the interests of the class;

•   The common legal questions and facts are more important than questions that affect only individuals; and

•   This class action will be more efficient than having many individual lawsuits.

Draft Long Form Notice
Exhibit B
Page 4 of 7

More information about why the Court is allowing this lawsuit to be a class action is in the Court's Order Certifying the Class, which is available at www._____com.

## THE CLAIMS IN THE LAWSUIT

### 5. What does the lawsuit complain about?

In the lawsuit, Plaintiff claims that Old Republic violated federal law, common law and the Pennsylvania consumer protection statute by failing to provide consumers with the proper rates for title insurance mandated by rates filed with the Pennsylvania Insurance Commissioner. You can read the Plaintiff's full Complaint at www._____.com.

### 6. How does Old Republic answer?

Old Republic denies that it did anything wrong. Old Republic says it charged the proper rates for title insurance. Old Republic contends that not only do Class Members have no cause of action against Old Republic, but that the Court also has no jurisdiction to hear the case. Old Republic's Answer to the Complaint is also at the website.

### 7. Has the Court decided who is right?

The Court has not decided whether the Plaintiff or Old Republic is correct. By establishing the Class and issuing this Notice, the Court is not suggesting that the Plaintiff will win or lose this case. The Plaintiff must prove her claims at a trial. (See "The Trial" below.)

### 8. What is the Plaintiff asking for?

The Plaintiff is asking this Court to find that Old Republic violated the law and failed to provide consumers the proper rate for title insurance. Plaintiff has asked the Court to award money to Class members to reimburse them for excessive title insurance premiums and to enjoin Old Republic from further engaging in the conduct specified in the Complaint.

### 9. Is there any money available now?

No money or benefits are available now because the Court has not yet decided whether Old Republic did anything wrong, and the two sides have not settled the case. There is no guarantee that money or benefits will ever be obtained. If they are, you will be notified about how to ask for a share.

## WHO IS IN THE CLASS

You need to decide whether you are affected by this lawsuit.

### 10. Am I in the Class?

Draft Long Form Notice
Exhibit B
Page 5 of 7

Judge Tucker decided that all persons or entities in the Commonwealth of Pennsylvania who within 10 years of having previously purchased title insurance in connection with their mortgages or fee interests, refinanced (during six (6) years preceding the filing of the Complaint) the identical mortgage or fee interest, and were charged a title insurance premium by Old Republic that did not include the applicable premium discount for title insurance on file with the Pennsylvania Insurance Commissioner, are members of the Class.

Thus, if you refinanced your property any time after June 9, 2000, and when you did such refinancing you had previously purchased title insurance on the same property within 10 years of the refinancing and you were charged the basic rate for title insurance rather than a reissue rate or a refinance rate, you are likely a member of the Class.

### 11. Am I in the Class if I received a discount?

If you received the lowest rate for title insurance, known as the refinance rate, you are not a member of the Class. If, however, you received only the reissue rate, you may have been eligible to receive the refinance rate, and would be a member of the Class.

### 12. I am still not sure if I am included?

If you are still not sure whether you are a member of the Class, you can get free help at www._____.com, or by calling or writing to Lead Class Counsel, at the phone number or address listed below. Do not call the Court.

## <u>YOUR RIGHTS AND OPTIONS</u>

You have to decide whether to stay in the Class [do nothing right now] or ask to be excluded before the trial. You have until _____, 2009, to exclude yourself.

### 13. What happens if I do nothing at all?

You don't have to do anything now if you want to keep the possibility of getting money or benefits from this lawsuit. **By doing nothing you are staying in the Class.** If you stay in the Class and the Plaintiff obtains money or benefits, either as a result of the trial or a settlement, you will be notified about how to apply for a share (or how to ask to be excluded from any settlement). Keep in mind that if you do nothing now, regardless of whether the Plaintiff wins or loses the trial, you will not be able to sue, or continue to sue, Old Republic about the same legal claims that are the subject of this lawsuit. You will also be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action.

### 14. Why would I ask to be excluded?

If you already have lawsuit against the Old Republic for similar claims and want to continue with it, you need to ask to be excluded from the Class. If you exclude yourself from the Class – which also means to remove yourself from the Class, and is sometimes called "opting out" of the

Draft Long Form Notice
Exhibit B
Page 6 of 7

Class – you will not get any money or benefits from this lawsuit even if the Plaintiff wins at trial or there is a settlement (that may or may not be reached) between Old Republic and the Plaintiff. However, you may then be able to sue or continue to sue Old Republic for charging excessive premiums that occurred or occurs at any time. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action. If you start your own lawsuit against Old Republic after you exclude yourself, you'll have to prove your claims in court, and you may have to hire and pay your own lawyer for that lawsuit. If you do exclude yourself so you can start your own lawsuit against Old Republic, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations or other time-sensitive requirements.

### 15. How to I ask the Court to exclude me from the Class?

To ask to be excluded, you must send an "Opt-Out Request" in the form of a letter sent by U.S. Mail, facsimile or e-mail stating that you want to be excluded from *Markocki v. Old Republic*. Be sure to include your name, address, and telephone number, and sign the letter. You must mail your Opt-Out Request postmarked or time-stamped by ___2009, to: *Markocki v. Old Republic* Opt-Outs, P.O. Box ____, or fax the letter to _____or e-mail your request to optout@_____.com Instructions on submitting a request to opt-out are also on the website at www._____com.

### THE ATTORNEYS REPRESENTING YOU

### 16. Do I have an attorney in this case?

The Court has certified Richard S. Gordon, Esq. of Quinn, Gordon & Wolf, Chtd. as Lead Class Counsel, and Philip S. Friedman of Friedman Law Offices, PLLC and David A. Searles and Michael D. Donovan of Donovan Searles, LLC as Class Counsel. The law firms and the attorneys are called "Class Counsel."

### 17. Should I get my own attorney?

You do not need to hire your own lawyer because Class Counsel is working on your behalf. But, if you want your own lawyer, you will have to pay that lawyer. For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.

### 18. How will the attorneys be paid?

If Class Counsel get money or benefits for the Class, they may ask the Court for fees and expenses. You won't have to pay these fees and expenses. If the Court grants Class Counsel's request, the fees and expenses would either be deducted from any money obtained for the Class or paid separately by Old Republic.

## THE TRIAL

The Court has scheduled a trial to decide who is right in this case.

### 19. How and when will the Court decide who is right?

As long as the case isn't resolved by a settlement or otherwise, Class Counsel will have to prove the Plaintiff's claims at a trial.

### 20. Do I have to come to the trial?

You do not need to attend the trial. Class Counsel will present the case for the Plaintiff and the Class, and Old Republic will present its defenses. You or your own lawyer are welcome to attend at your own expense.

### 21. Will I get money after the trial?

If at some point the Plaintiff obtains money or benefits as a result of the trial or a settlement, however, and you did not exclude yourself from the Class, you will be notified about how to participate. We do not know how long this will take.

## GETTING MORE INFORMATION

### 22. Are more details available?

Visit the website, www.___.com, where you will find the Court's Order Certifying the Class, Plaintiff's Complaint, the Defendant's Answer to the Complaint, as well as information about how to exclude yourself as a Class Member. You may also speak to one of the attorneys working on this class action by calling _____, or e-mailing at any of the following addresses: rgordon@quinnlaw.com; psf@consumerlawhelp.com; or dsearles@donovansearles.com.

# EXHIBIT D

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONNA MARKOCKI, on behalf of herself and all others similarly situated,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **C.A. No. 06-2422** |
| | : | |
| **OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,** | : | |
| | : | **CLASS ACTION** |
| **Defendant.** | : | |
| | : | |

## SUMMARY NOTICE OF PENDENCY OF CLASS ACTION

**TO:** All persons or entities in the Commonwealth of Pennsylvania who within 10 years of having previously purchased title insurance in connection with their mortgages or fee interests, refinanced the identical mortgage or fee interest, and were charged a title insurance premium by Old Republic National Title Insurance Company that did not include the applicable premium discount for title insurance on file with the Pennsylvania Insurance Commissioner (the "Class"), but not including any officers and directors of the Defendant, who are excluded from the Class.

# PLEASE TAKE NOTICE:

PURSUANT TO AN ORDER issued by the Honorable Petrese B. Tucker of the United States District Court for the Eastern District of Pennsylvania, you are advised of the existence of the above entitled class action lawsuit. On December 9, 2008, the Court directed that this case proceed as a class action under Federal Rule of Civil Procedure 23 and that this Notice be sent to you. If you are a member of the Class described above, your rights are being determined in this case.

## BACKGROUND

This case was filed by Plaintiff Donna Markocki, who filed a Class Action Complaint against Old Republic National Title Insurance Company (the "Defendant"), pursuant to state law.

To briefly summarize the case, the Plaintiff alleges that the Defendant systematically charged Pennsylvania consumers who refinance their mortgages premiums for title insurance that are far in excess of the rates permitted under Pennsylvania law. Defendant maintains its actions did not violate the law.

## THE PROPOSED CLASS

The Court has certified the Class as defined above. It is estimated that the number of transactions involving Class members is in excess of 90,000 during the applicable time period.

If you fall within the definition of either Class, you will be a Class member. YOU DO NOT NEED TO TAKE ANY ACTION IN ORDER TO REMAIN IN THE CLASS. Being a Class member means that, if a judgment award is issued by the Court or a settlement is approved by the Court, you will have the right to participate in the judgment or settlement and become eligible for the judgment or settlement benefits. If a settlement is approved, all Class members will release any claims against the defendants that were asserted in the lawsuit.

The Court has certified the Plaintiff Donna Markocki as Class Representative. The Court has certified Richard S. Gordon, Esq. of Quinn, Gordon & Wolf, Chtd. as Lead Class Counsel, and Philip S. Friedman of Friedman Law Offices, PLLC and David A. Searles and Michael D. Donovan of Donovan Searles, LLC as Class Counsel.

Draft Summary Notice
Exhibit A
Page 3 of 4

## <u>YOUR RIGHTS AS A CLASS MEMBER</u>

If you wish to remain a member of the Class and participate in the lawsuit as a Class member, you need not respond to this notice or take any action. If a judgment is entered against the defendant or a settlement is approved by the Court between the parties, you will be advised.

If you do not wish to remain a member of the Class, and do not wish to participate in the lawsuit, you must opt-out by **[30 days from date of Notice]**, 2009 by mailing, faxing or e-mailing a written request for exclusion, referencing the name and number of the case as *Markocki v. Old Republic National Title Insurance Company*, Civil Action No. 06-2422, to Lead Class Counsel:

Richard S. Gordon, Esq.
QUINN, GORDON & WOLF, CHTD.
102 West Pennsylvania Avenue, Suite 402
Baltimore, Maryland 21204
Facsimile 410-825-0066
optout@_____.com

If no written request for exclusion from the Class is received by the date indicated above, you will be considered to be included in the Class. Any questions you have concerning this case should be directed to Lead Class Counsel

## <u>OTHER MATTERS</u>

This Notice does not fully describe all of the claims and defenses of this lawsuit. You may, of course, seek the advice and guidance of your own attorney if you desire. For further information, you may review all of the pleadings and other documents filed in this case at the Office of the Clerk, United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, Pennsylvania set forth above. You may

Draft Summary Notice
Exhibit A
Page 4 of 4

also review a more detailed description of the litigation and your rights as a class member

at www._____.com.

**DO NOT CONTACT THE CLERK, THE JUDGE OR DEFENDANT WITH**

**ANY QUESTIONS ABOUT THIS CASE.**

_____

Michael E. Kunz, Clerk of Court

## CERTIFICATE OF SERVICE

I hereby certify that on the foregoing was electronically filed on this date and that service

is therefore being made electronically on the following:

David E. Edwards, Esq.
WHITE AND WILLIAMS, LLP
1800 One Liberty Place
Philadelphia, PA  19103

Joel. I. Herzfeld, Esq.
SIMON, RICCHEZZA, SINGER & TURCHI, LLP
1700 Market Street, Suite 3110
Philadelphia, PA 19103

Steven A. Schwartz, Esq.
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041

*s/ David A. Searles*_____
David A. Searles

Dated: January 9, 2009