**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNA MARKOCKI** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | |
| **OLD REPUBLIC NATIONAL TITLE** | : | **NO. 06-2422** |
| **INSURANCE COMPANY** | : | |
| **Defendant,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITIZENS' ABSTRACT INC.** | : | |
| **Third Party Defendant.** | : | |

**MEMORANDUM**

**TUCKER, C.J.**                                                                           **May 26, 2015**

        Presently before the Court are Defendant Old Republic National Title Insurance

Company's Motion to Decertify Class (Doc. 213), Third Party Defendant Citizens' Abstract

Inc.'s Motion to Decertify Class (Doc. 216), Plaintiff Donna Markocki's Motion for Partial

Summary Judgment (Doc. 168), Defendant Old Republic National Title Insurance Company's

Cross-Motion for Summary Judgment (Doc. 181), and Third Party Defendant Citizens' Abstract

Inc.'s Motion for Joinder or, Alternatively, Motion for Summary Judgment (Doc. 182), and the

parties' various responses and replies thereto.  Upon careful consideration of the parties'

motions, briefs and exhibits, supplemental notices, oral arguments, and for the reasons that

follow, the Court will: GRANT IN PART and DENY IN PART Defendant's and Third Party

Defendant's Motions to Decertify Class; DENY Plaintiff's Motion for Partial Summary

Judgment; GRANT IN PART and DENY IN PART Defendant's Cross-Motion for Summary

Judgment; and DENY Third Party Defendant's Motion for Joinder.

## I.  FACTUAL BACKGROUND

Class Plaintiff Donna Markocki ("Plaintiff") brings this class action on behalf of Pennsylvania homeowners against Defendant Old Republic National Title Insurance Company ("Old Republic") for allegedly failing to apply mandatory discounts on title insurance premiums and allegedly sharing those premiums with title agents in violation of state and federal law.

Title insurance during a real estate transaction protects against loss from undiscovered encumbrances on or defects in title and eliminates most risks through the title examination and settlement process.  The present case involves home mortgage refinance transactions and accompanying purchases of loan policies, a type of title insurance generally paid for by the borrower-homeowner to protect the lender's security interest in the property.   Old Republic is the title insurer for the loan policies in question.

A title insurer may sell insurance directly to consumers, but in Pennsylvania, title insurers more commonly appoint an agent ("title agent") to issue policies on their behalf.  *See* 40 Pa. Cons. Stat. §§ 910-24, 910-26.  After receiving an order, a title agent will perform a title search and produce a "Title Commitment" or "Binder," which binds the title insurer to issue a policy if all conditions are met.  The Title Commitment includes information such as the type and amount of insurance to be issued, requirements to title such as the satisfaction of an outstanding mortgage, and exceptions to title.  Typically, the title agent also handles the closing of the real estate transaction, which entails collecting necessary documents, arranging for the proper payment and distribution of funds, preparing the HUD-1 settlement statement ("HUD-1")[1], and

---

[1] The HUD-1 itemizes the services provided to the borrower-homeowner and the fees charged.  Agents may also use the HUD-1A form, an optional form for transactions without sellers.  *See* 12 C.F.R. § 1024.8(a) (use of HUD-1 or HUD-1A settlement statements).

issuing the loan policy. Included on the HUD-1 at line 1108 is the title insurance rate charged for that transaction.

Both a title insurer and its agent must comply with the Pennsylvania Title Insurance Act ("TIA"), which, among other things, regulates the rates charged for title insurance policies. 40 Pa. Cons. Stat. § 910-37. Under the law, title insurers must file proposed premium rates with the Pennsylvania Insurance Commissioner or elect to be a member of a licensed rating organization that makes such filings on behalf of all members. *Id.* § 910-37(a)-(b). Like most other title insurers in Pennsylvania, Old Republic elected to file rates through the Title Insurance Rating Bureau of Pennsylvania ("TIRBOP"). Once the Manual of Title Insurance Rating Bureau of Pennsylvania ("Rate Manual") is filed with and approved by the Insurance Commissioner, a title insurer who is a member of TIRBOP must charge rates in accordance with the Rate Manual. *See id.* § 910-37(h).

During most of the relevant time period, the Rate Manual provided for three different rate tiers: (1) the Basic Rate; (2) the Reissue Rate, which is 90% of the Basic Rate; and (3) the Refinance Rate, which is 80% of the Reissue Rate or 72% of the Basic Rate.[2] The Basic Rate is the default premium charged for title insurance. The Reissue and Refinance Rates apply when only a few years have elapsed since the issuance of a prior title insurance policy.

Plaintiff purchased her home at 3315 Almond Street in Philadelphia, PA in 2002.[3] She purchased a title insurance policy as part of this transaction, as required by her mortgage lender.

---

[2] From as early as October 1, 1999, the Rate Manual provided for this three-tier rate system. (Dw. Edwards Decl., Ex. B, 1999 Rate Manual, Doc. 189). The three tiers were eliminated as of July 1, 2012 when the Pennsylvania Insurance Commissioner approved an amended Rate Manual. (*Id.*, Ex. E, 2012 Rate Manual.) The 2012 Rate Manual and subsequent iterations have instead authorized Sale and Non-Sale Rates, the amounts of which are set forth in the Rate Manual's Schedule of Rates, Section 5.50. (*Id.*)

[3] This Court's Opinion dated Dec. 9, 2008 stated, with citation to the Complaint, that Plaintiff purchased her home on April, 16, 2003. Upon further review of the record, however, it appears that Plaintiff purchased her home in October 2002, with the recording of her mortgage taking place on April 16, 2003. (Mem. of Law in Supp.

Plaintiff refinanced her mortgage loan on November 30, 2005.  As part of the refinancing, Plaintiff purchased a loan policy from Old Republic through its appointed agent, Citizens' Abstract Inc. ("Citizens"), who also conducted the closing.  The loan policy was valued at $123,750.00.  Plaintiff paid the Basic Rate of $978.75, as listed under "Title Charges" on the HUD-1, but she qualified for a discounted Reissue Rate.  Plaintiff contends that her and other class members' overcharge for title insurance resulted from Old Republic's illegal predatory practices.

## II.    PROCEDURAL BACKGROUND

Plaintiff filed a Class Action Complaint on June 8, 2006 against Old Republic alleging violations of the following: (1) Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607; (2) money had and received; (3) unjust enrichment/accounting/disgorgement/restitution; and (4) Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  This Court denied Old Republic's motion to dismiss the Complaint on November 6, 2006.  On November 17, 2006, Old Republic filed a Third-Party Complaint against Citizens alleging claims of negligence, breach of fiduciary duty, breach of contract, and contribution or indemnification.  Citizens filed a motion to dismiss, which this Court denied on November 21, 2007.

After a period of class discovery, Plaintiff moved for class certification on May 2, 2008 and amended her motion on September 28, 2008.  On December 9, 2008, this Court certified a class defined as:

> All persons or entities in the Commonwealth of Pennsylvania who, within 10 years of having previously purchased title insurance in connection with their mortgage or fee interest, refinanced (during the six years preceding the filing of the Complaint) the identical mortgage or fee interest in a transaction that included the purchase of a title insurance policy from Old Republic Title that exceeded the applicable premium discount for title insurance in Pennsylvania.

---

of Pl.'s Revised Mot. for Partial Summ. J., Ex. I, Markocki Dep. 43:7-14, July 31, 2008; *id.* Ex. J, Markocki Title Commitment, Schedule B.)

*Markocki v. Old Republic Nat'l Title Ins. Co.*, 254 F.R.D. 242, 251 (E.D. Pa. 2008). Old

Republic then filed a Petition for Permission to Appeal Pursuant to Rule 23(f), which the Third

Circuit denied on January 28, 2009. Upon Plaintiff's and Old Republic's joint motion, the Court

stayed the case pending mediation.

After mediation proved unsuccessful, the Court ordered notice to the class on June 22,

2009, which was completed on July 13, 2009. The parties again attempted mediation, but to no

avail. On May 25, 2010, Plaintiff and the certified class filed a motion for partial summary

judgment as to liability and for appointment of a special master to determine damages. Shortly

after, on June 8, 2010, the Court granted another stay pending the Supreme Court of

Pennsylvania's review of *White v. Conestoga Title Insurance Company*, 982 A.2d 997 (Pa.

Super. Ct. 2009), on the issue of whether the TIA mandated administrative remedies for claims

similar to Plaintiff's and the class's.

In an opinion dated August 20, 2012, the Supreme Court of Pennsylvania held that

insureds are precluded from pursuing common law remedies arising from a title insurer's

overcharging because statutory remedies under the TIA are exclusive. *White v. Conestoga Title

Ins. Co.*, 53 A.3d 720, 734-35 (Pa. 2012). Preclusion does not apply, however, to statutory

claims such as those arising under the UTPCPL. *Id.* at 735. Accordingly, Plaintiff here

dismissed her common law claims for lack of administrative exhaustion, leaving only the

RESPA and UTPCPL claims for adjudication.

Plaintiff amended her motion for partial summary judgment on November 1, 2012. On

December 18, 2012, Old Republic filed a cross-motion for summary judgment. The same day,

Citizens filed a motion for joinder of parties, namely all other agents of Old Republic that

transacted with class members. Old Republic then moved to decertify the Class on April 23, 2013 and Citizens similarly moved on May 8, 2013. The Court held oral arguments on all outstanding motions on July 23, 2013.

## III. DISCUSSION

The parties bring a number of motions for this Court's review. The Court will address, in order, Old Republic's and Citizens' Motions to Decertify the Class, Plaintiff's and Old Republic's Motions for Summary Judgment, and Citizens' Motion for Joinder.

### A. Old Republic's and Citizens' Motions to Decertify the Class

Old Republic and Citizens move the Court to decertify the class. Federal Rule of Civil Procedure 23(c)(1)(C) provides, "An order that grants or denies class certification may be altered or amended before final judgment." "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Barnes v. Am. Tobacco. Co.*, 161 F.3d 127, 140 (3d Cir. 1998) ("District Courts are required to reassess their class rulings as the case develops."). Despite this flexibility, actual conformance with Rule 23 remains "indispensable." *Gen. Tel. Co. of Sw.*, 457 U.S. at 160. Class certification is proper only if the court, after a "rigorous analysis," finds that the criteria of Rule 23 are satisfied. *Byrd v. Aaron's Inc.*, No. 14-3050, 2015 WL 1727613, at *3 (3d Cir. Apr. 16, 2015) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008)). A party seeking class certification must show that the four prerequisites of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Further, the party must show how the proposed class action fits into one of three categories listed in Rule 23(b). Fed. R. Civ. P. 23(b).

Reconsideration of an earlier class certification order is warranted upon developments in the litigation such as changes in substantive or procedural law. *Alberton v. Commonwealth Land Title Ins. Co.*, 299 F.R.D. 109, 113 (E.D. Pa. 2014). Old Republic and Citizens argue that reconsideration is proper because of intervening case law on the elements of UTPCPL and RESPA claims and changes in the legal landscape for class actions. [4] The Court will revisit certification of Plaintiff's UTPCPL and RESPA claims, respectively.

### 1. Class Certification on the UTPCPL Claim

The UTPCPL declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 Pa. Cons. Stat. § 201-3. In defining unfair or deceptive practices, the statute includes a catch-all provision that prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id.* § 201-2(4)(xxi). To establish liability for "deceptive conduct," a plaintiff must prove: (1) that the defendant made a misrepresentation or engaged in conduct likely to deceive a consumer acting reasonably under similar circumstances, (2) that the plaintiff justifiably relied on defendant's misrepresentation or deceptive conduct, and (3) that the plaintiff's justifiable reliance caused an ascertainable loss. *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012) (quoting *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009)). The UTPCPL also has a standing provision for private rights of action, which provides:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by . . . this act, may bring a private

---

[4] In its Motion to Decertify the Class, Citizens joins with Old Republic in seeking decertification and presents arguments substantially similar to those of Old Republic. This Court's discussion of Old Republic's Motion to Decertify the Class is therefore equally applicable to Citizens' motion.

action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 Pa. Cons. Stat. § 201-9.2.

Plaintiff's UTPCPL claim, arising under the catch-all provision, alleges that Old Republic engaged in deceptive conduct that caused Plaintiff and the class to suffer damages in the form of excessive payments for title insurance. This Court granted class certification in part because class members were presumed to have justifiably relied on Defendants' deceptive conduct, which minimizes individual issues. *Markocki v. Old Republic Nat'l Title Ins. Co.*, 254 F.R.D. 242, 251 (E.D. Pa. 2008). In seeking decertification, Old Republic argues that a sister court's decision in *Cohen v. Chicago Title Insurance Company*, a factually-similar case, rejected such a presumption. Civ. Action No. 06-873, 2013 WL 842706, at *5 (E.D. Pa. Mar. 7, 2013). The ruling in *Cohen* relied on a Third Circuit decision that the standing provision of the UTPCPL requires a private plaintiff to prove justifiable reliance affirmatively. *Id.* at *3-4; *see Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008). Old Republic contends that, like the *Cohen* court, this Court should decertify the class on the UTPCPL claim because individual issues related to proving justifiable reliance render this case unfit for class adjudication.

Plaintiff responds that proving justifiable reliance may be accomplished by common evidence and decertification is unnecessary. Plaintiff concedes that under the facts of *Hunt*, justifiable reliance could not be proven on a class-wide basis. She argues, however, that the *Cohen* court incorrectly applied the holding in *Hunt* to facts that were distinguishable. Plaintiff urges this Court not to make the same mistake. She contends that common evidence shows the following facts: a HUD-1 exists from each class member's transaction; the title agent prepared the HUD-1 and calculated the title insurance rate listed on it at line 1108; the title agent is obligated to give the borrower the best rate for which he or she qualifies; and, if any doubt exists

as to which rate to charge, the title agent must use the lower rate. Therefore, according to

Plaintiff, the fact that class members paid the exact amount that title agents calculated and placed

on the HUD-1 is common evidence of justifiable reliance.

In *Hunt v. U.S. Tobacco Company*, the Third Circuit considered a putative class action

claim alleging that a smokeless tobacco company engaged in anticompetitive conduct and

concealed its actions in violation of the UTPCPL catch-all provision. 538 F.3d at 219. The

question on appeal was "whether a plaintiff is required to prove reliance in order to state a

deception claim under the amended catch-all provision of the [UTPCPL]." *Id.* at 220. After

discussing several Pennsylvania Supreme Court decisions, the Third Circuit answered in the

affirmative. *Id.* at 222-24 (citing *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186 (Pa. 2007), *Yocca v.

Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425 (Pa. 2004), and *Weinberg v. Sun Co., Inc.*, 777

A.2d 442 (Pa. 2001)). According to *Hunt*, the requirement of proving justifiable reliance stems

from the UTPCPL standing provision and is therefore unaffected by the 1996 amendments to the

catch-all provision. *Id.* The Court also rejected the plaintiff's suggestion that reliance may be

presumed, stating, "Hunt cannot enjoy a presumption of what he must prove affirmatively—that

is, under the [UTPCPL], Hunt must prove justifiable reliance affirmatively." *Id.* at 227. Since

the *Hunt* decision, the Supreme Court of Pennsylvania has not squarely addressed the issue, but

Pennsylvania appellate courts have interpreted the UTPCPL standing provision consistently with

*Hunt*. *See Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1289 (Pa. Super. Ct. 2015)

("Accordingly, the element of justifiable reliance always was a part of private actions under the

statutory language of the UTPCPL."); *DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 592 (Pa.

Super. Ct. 2013) ("[T]he UTPCPL plaintiff must still prove justifiable reliance and causation,

because the legislature 'never intended [the] statutory language directed against consumer fraud

to do away with the traditional common law elements of reliance and causation.'" (citing *Toy*, 928 A.2d at 202)).

In *Cohen v. Chicago Title Insurance Company*, a sister court applied the holding of *Hunt* in a class action similar to the one before this Court, in which Pennsylvania homeowners alleged a title insurer violated the UTPCPL by overcharging premiums. Civ. Action No. 06-873, 2013 WL 842706, at *4-*5 (E.D. Pa. Mar. 7, 2013). The court noted, "The holding in *Hunt* creates a difficult obstacle for a plaintiff pursuing a class action based on the UTPCPL's catch-all provision." *Id.* at *4. In *Cohen*, individual questions of justifiable reliance, misrepresentation, and entitlement to a discounted rate predominated over questions common to the class. *Id.* at *5. Additionally, *Slapikas v. First American Title Insurance Company*, which also addressed facts similar to the present case, reached the same conclusion that justifiable reliance must be affirmatively proven. 298 F.R.D. 285, 292 (W.D. Pa. 2014). In both *Cohen* and *Slapikas*, the requirement that plaintiffs affirmatively demonstrate justifiable reliance proved fatal to class certification because such demonstrations must occur individually. *Cohen*, 2013 WL 842706, at *5; *Slapikas*, 298 F.R.D. at 298.

This Court similarly adopts the holding in *Hunt* that a private plaintiff alleging a violation of the UTPCPL must affirmatively prove justifiable reliance in order to prevail. Such a holding implicates the commonality and predominance of the certified class, which are "indispensable" requirements under Rule 23. *Gen. Tel. Co. of Sw.*, 457 U.S. at 160. Commonality and predominance, which requires that "there are questions of law or fact common to the class," Fed R. Civ. P. 23(a)(2), and that these questions "predominate over any questions affecting only individual members," *id.* 23(b)(3), are often analyzed together. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009). In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court

of the United States discussed a plaintiff's burden in proving commonality. 131 S. Ct. 2541, 2550-52 (2011). Commonality requires proof that a classwide proceeding will generate "common answers apt to drive the resolution of the litigation." *Id.* "The common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "[C]lass certification is unsuitable where 'proof of the essential elements of the cause of action requires individual treatment[.]'" *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 266 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)).

The Court finds that decertification is necessary on the UTPCPL claim because the need to show each class member's justifiable reliance on Old Republic's or its agent's deceptive conduct overwhelms common issues. The question of justifiable reliance and, by extension, entitlement to a discounted rate cannot be resolved "in one stroke" but raises individual issues that render this case unfit for class treatment. *Wal-Mart*, 131 S. Ct. at 2551. In so concluding, the Court rejects Plaintiff's contention that *Cohen* misapplied the ruling of *Hunt*. *Hunt* is not limited to its facts, but stands for the rule that justifiable reliance is required of private plaintiffs alleging *any* claim under the UTPCPL. *See Hunt,* 538 F.3d at 226-27 ("In sum, the Supreme Court of Pennsylvania has announced and applied a *broad rule* that private plaintiffs must allege justifiable reliance under the [UTPCPL]. We thus think it imprudent to create an exception here for plaintiffs suing under the 'deception' prong of the [UTPCPL]'s catch-all provision, and we decline to do so." (emphasis added)); *see also Smith v. State Farm Mutual Auto. Ins. Co.*, 506 F. App'x 133, 137 (3d Cir. 2012) (affirming dismissal of a UTPCPL claim because plaintiff failed to allege justifiable reliance on insurer's wrongful denial of benefits).

The issue of whether class members justifiably relied on the HUD-1, which stated the cost of title insurance on line 1108, is dispositive as it is required both to establish plaintiffs' standing under the UTPCPL and to establish liability under the deception prong of the catch-all provision. The Court finds that this is not a common question because whether one class member justifiably relied on his HUD-1 has no relation to whether another member justifiably relied on hers. Plaintiff argues that the fact that class members paid the exact amount listed on line 1108 of their HUD-1 statements is conclusive evidence of justifiable reliance. To the contrary, the fact of payment for title insurance does little to answer whether a class member relied on the title insurance rate in deciding whether to complete his or her refinance transaction. It also fails to answer whether that reliance, if any, was justifiable. Determining justifiable reliance requires individual inquiries into each class member's transaction and decertification is therefore warranted. *See Cohen*, 2013 WL 842706, at *4 ("Whether a plaintiff's reliance on a defendant's deceptive conduct was justifiable . . . requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction." (internal quotation marks omitted)).

### 2. *Class Certification on the RESPA Claim*

RESPA is a federal statute that regulates the real estate settlement process so that consumers receive "greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges[.]" 12 U.S.C. § 2601. Among its various protections, RESPA eliminates kickbacks and referral fees that tend to increase the cost of settlement services unnecessarily: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage

loan other than for services actually performed." *Id.* § 2607(b); *see id.* § 2601(b)(2) (congressional findings and purpose). "Settlement services" as defined in RESPA include "any service provided in connection with a real estate settlement including . . . title insurance[.]" *Id.* § 2602(3). Explicitly excluded from the charge splitting prohibition is the payment of a fee "by a title company to its duly appointed agent for services actually performed in the issuance of a policy of title insurance[.]" *Id.* § 2607(c)(1)(B).

Plaintiff claims that the excessive title insurance premiums charged by Old Republic and its agents violate RESPA Section 2607(b). Old Republic moves to decertify the class on Plaintiff's RESPA claim on grounds that the reasonableness of each member's title insurance premium in relation to the services received is an issue resolved only on an individual basis. According to Old Republic, this would be consistent with the Fifth Circuit's holding in *Mims v. Stewart Title Guaranty Company*, which decertified a class under a similar fact pattern. 590 F.3d 298, 306-07 (5th Cir. 2009). Old Republic also argues that individual issues precluding class certification are whether class members' transactions were covered by RESPA and whether a class member's claim is subject to the RESPA statute of limitations. Thus, concludes Old Republic, decertification is necessary on the RESPA claim in light of these individual issues.

Plaintiff responds that Old Republic's focus on the "reasonableness of services" is without merit. She argues that the fact of overcharge, which is common to the class, is sufficient to prove RESPA liability. Plaintiff's theory of liability rests on her position that the overcharge has a "dual existence"—it is "a charge for settlement services not actually performed" and "was split between the Defendant and its agents." (Pl.'s Mem. in Opp'n to Def.'s and Third-Party Def.'s Mots. To Decertify Class, 7, Doc. 217.) Plaintiff argues that the loan policy and services rendered at a discounted rate were the same as those provided at the more expensive Basic Rate.

Plaintiff concludes that, because no additional services were provided in exchange for the overcharge, the splitting of the overcharge between Old Republic and its agents violated RESPA. Plaintiff also argues that the statute of limitations has no relevance to class certification.

In *Mims*, the Fifth Circuit decertified a class of Texas homeowners on its RESPA Section 2607(b) claim. 590 F.3d 298 (5th Cir. 2009). At the trial level, the district court had accepted the plaintiffs' position that title insurance fees could be split between "reasonable" and "unreasonable" portions, thus implicating the "reasonable relationship" liability standard of U.S. Department of Housing and Urban Development ("HUD") regulations: "If the payment of a thing of value bears no reasonable relationship to the market value of the goods or services provided, then the excess is not for services or goods actually performed or provided." *Id.* at 305 (quoting 24 C.F.R. § 3500.14(g)(2)). Later, in granting certification, the district court relied on allegations that, as a matter of fact, no services were provided to justify the excess i.e. "unreasonable" portion of plaintiffs' charges. *Id.* at 306. The Fifth Circuit, however, found this ruling to be inconsistent with a theory of liability that "requires an inquiry into the reasonableness of the payments for goods and services." *Id.* at 307. It concluded that individual inquiries were required to determine reasonableness and class certification under Rule 23(b)(3) was improper. *Id.*

To start, the Court notes that *Mims* has persuasive, but not precedential authority over the present matter. Further, *Mims* is distinguishable in that Plaintiff here does not rely on the "reasonable relationship" liability standard of HUD regulations.[5] Rather, Plaintiff appears to

---

[5] Effective July 2014, the HUD regulations for RESPA, previously found at 24 C.F.R. Part 3500, were withdrawn pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act. 79 Fed. Reg. 34224-01 (June 16, 2014). Responsibility for enforcing RESPA had transferred to the Consumer Financial Protection Bureau ("CFPB"), which implemented a regulation identical to the HUD regulation at issue in *Mims*. 12 C.F.R. § 1024.14(g)(2). Regarding the applicability of withdrawn HUD regulations, the CFPB regulations provide, "Courts and administrative agencies . . . may use previous opinions to determine the validity of conduct under the previous Regulation X." *Id.* § 1024.4.

base her theory of liability on the statutory language of Section 2607(b) itself, arguing that Old Republic impermissibly charged for settlement services not actually performed and split that charge with its agents. This is appropriate because the Third Circuit has found Section 2607(b) to be unambiguous as to whether it provides a cause of action for overcharges, thus declining to rely on the "reasonable relationship" standard found in HUD regulations. *Santiago v. GMAC Mortg. Grp., Inc.*, 417 F.3d 384, 387-88 (3d Cir. 2005). To this extent, Plaintiff is correct in asserting that Old Republic's focus on reasonableness is without merit. For these reasons, *Mims* does not counsel in favor of decertification.

Old Republic also argues that individual issues regarding RESPA coverage and statute of limitations defeat class certification. Such arguments strike at the predominance requirement of Rule 23(b)(3). Under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" The Rule does not require every element of a plaintiff's claim to be susceptible to class-wide proof, but it does require that common questions predominate over individual ones. *Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1196 (2013).

RESPA applies to "federally related mortgage loans" and exempts credit transactions "primarily for business, commercial, or agricultural purposes[.]" 12 U.S.C. §§ 2602(1), 2606. Old Republic argues, and courts have found, that determining whether RESPA covers a particular loan is an individual issue.[6] *See Toldy v. Fifth Third Mortg. Co.*, No. 1:09CV377, 2011 WL 4634154, at *3 (N.D. Ohio Sept. 30, 2011) ("[W]hether a putative class member's loan

---

[6] As support, Old Republic cites to declarations of two employees and various title agents and title attorneys, which were submitted along with its summary judgment briefing. These declarations consistently state that borrowers may have refinanced for business, commercial, or agricultural purposes and closing files do not necessarily include information on the loan's purpose or the property type. (*See* Docs. 185, 190; Boscom Decl. ¶ 19; Bechtold Decl. ¶¶ 19-21; Coploff Decl. ¶ 16; Holl Decl. ¶ 15; Krug Decl. ¶¶ 20-21; Laslow Decl. ¶¶ 24-25; Morgan Decl. ¶ 30; Patrono Decl. ¶15; Priest Decl. ¶¶ 17-18; Shoop Decl. ¶ 15; Travis Decl. ¶ 25.)

garners RESPA coverage cannot be known short of a case by case analysis."); *Hinchliffe v. Option One Mortg. Corp.*, Civ. Action No. 08-2094, 2009 WL 1708007, at *3 (E.D. Pa. June 16, 2009) ("In order to determine whether the loan was primarily personal or commercial in nature, we must look at the entire transaction and determine the borrower's primary motive for seeking the loan.").  Old Republic also argues that a statute of limitations defense raises individual issues. RESPA imposes a one-year statute of limitations for private actions alleging a violation of Section 2607.  12 U.S.C. § 2614.  The certified class, however, includes members whose transactions occurred up to six years prior to the filing of the Complaint.  Contrary to Plaintiff's arguments in opposition, statute of limitations issues are indeed relevant to a class certification analysis.  *See In re Cmty. Bank of N. Va.*, 622 F.3d 275, 293-94 (3d Cir. 2010) ("Situations abound where statute-of-limitations issues overlap with certain of the Rule 23 requirements.").

The Court agrees that RESPA's scope of coverage and statute of limitations raise individual issues, but it does not find that these issues predominate.  The heart of Plaintiff's RESPA claim is whether Old Republic split a charge for settlement services not actually performed in violation of 12 U.S.C. § 2607(b).  This question, which is common to the class and central to the validity of each member's claim, predominates here.  As discussed, Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof.'"  *Amgen Inc.*, 133 S. Ct. at 1196 (internal quotation marks and alterations omitted).  "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Id.* at 1191.  Thus, the Court concludes that individual issues do not predominate common questions of liability and declines to decertify the class on the RESPA claim.

**B. Plaintiff's and Old Republic's Cross-Motions for Summary Judgment**

Both Plaintiff and Old Republic seek summary judgment in their favor on the issue of liability under the UTPCPL and RESPA. The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering summary judgment, the court is not to weigh the evidence or to determine the truth of the matter. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). To identify whether an issue of material fact is genuine, the court is "to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences are to be made in the nonmoving party's favor. *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010). A factual dispute is material if it could affect the outcome of the suit under governing law. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters*, 584 F.3d at 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). The Court will consider summary judgment of Plaintiff's UTPCPL and RESPA claims, respectively.

*1. Summary Judgment on the UTPCPL Claim*

Both Plaintiff and Old Republic move for summary judgment on the issue of liability under the UTPCPL. In light of the class's decertification, the Court will address the parties' arguments as they relate to Plaintiff's individual transaction. As discussed, under the UTPCPL

catch-all provision, Plaintiff must show that Old Republic, through its agent, made a

misrepresentation or engaged in deceptive conduct, Plaintiff justifiably relied on the

misrepresentation or deceptive conduct, and Plaintiff suffered an ascertainable loss as a result.

*See Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012) (quoting

*Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009)).  The burden on

Plaintiff is not to prove fraud, but to prove deceptive conduct which creates a likelihood of

confusion or of misunderstanding.  *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40

A.3d 145, 154-55 (Pa. Super. Ct. 2012) (adopting the Pennsylvania Commonwealth Court's and

federal courts' interpretation of the 1996 amendment to the catch-all provision, which lessened

the degree of proof required for deceptive conduct).

 A homeowner's entitlement to a discounted title insurance rate is determined by the

TIRBOP Rate Manual, which mandates rates for all member title insurers, including Old

Republic.  Section 5.3 of the Rate Manual in effect at the time of Plaintiff's transaction discussed

the availability of the Reissue Rate:

> A purchaser of a title insurance policy shall be entitled to the reissue rate if the
> real property to be insured is identical to, or is part of, real property insured 10
> years immediately prior to the date the insured transaction closes.  Evidence of
> previous insurance in accordance with the provisions of Section 2.8 of this
> Manual must be considered in order to apply the reissue rate.

(Mem. of Law in Supp. of Pl.'s Revised Mot. for Partial Summ. J., Ex. M, 2005 Rate Manual, 5-

2, Doc. 169.)  Section 2.8 provides:

> As evidence of previous insurance, an Insurer shall rely upon:
> (a) the recording (within the period of time specified within the applicable Section
> of the Manual) of either:
> > (1) a deed to a bona fide purchaser for value, or
> > (2) an unsatisfied mortgage to an institutional lender . . . .

(*Id.*, 2005 Rate Manual, 2-2.)

Based on a review of the record, this Court finds that there is no genuine dispute of material fact that Plaintiff was overcharged for her title insurance, never received a refund, and thus sustained an ascertainable loss.  Plaintiff's refinance transaction closed on November 30, 2005.  (Mem. of Law in Supp. of Pl.'s Revised Mot. for Partial Summ. J., Ex. K, Markocki HUD-1.)  Plaintiff's Title Commitment shows that, at that time, an institutional lender held an outstanding, recorded mortgage on the property, which closed on October 17, 2002 and falls within the 10-year look-back period for the Reissue Rate.  (*Id.*, Ex. J, Markocki Title Commitment, Schedule B.)  The mortgaged property was also identical to the property being insured.  (*Id.*)  According to the Rate Manual, this evidence qualified Plaintiff for the Reissue Rate, but she was charged the Basic Rate.[7]  (*Id.*, Ex. K, Markocki HUD-1.)  *See also Patterson v. Fidelity Nat'l Title Ins. Co.*, Nos. GD-03-021176, GD-05-017476, 2013 WL 3502094, at *4-*5 (Pa. Com. Pl. June 24, 2013) (holding that evidence of an earlier policy included recorded deeds or first mortgages where this was the eligibility criteria enumerated in the Rate Manual).  Plaintiff therefore suffered an ascertainable loss in the amount of her overcharge.[8]

---

[7] Deposition testimony of Herbert Walton, Old Republic Senior Vice President and Mid-Atlantic Area Manager, confirms Plaintiff's erroneous charge:

> Q:  You mentioned earlier in your deposition that you reviewed Ms. Markocki's file.  Does this appear to be the file?
> A:  I think what I said is I had – I had – obtained the file and I looked at the HUD sheet with regard to the rate.  That's as much of a review that I've done – that I did.
> Q:  Did you make a determination as to whether or not she was charged the correct rate?
> A:  My recollection was that she was charged the basic rate.
> Q:  Did you look through the file at all to determine whether or not Ms. Markocki was charged the correct rate:
> A:  My recollection is that she was – should have gotten the reissue rate . . .
> Q:  Was there any instruction from you, as the head of the Wayne, Pennsylvania office, that a refund should be given to Ms. Markocki?
> A:  No.

(Mem. of Law in Supp. of Pl.'s Revised Mot. for Partial Summ. J., Ex. A, Walton Dep. 145:16-146:7, 163:22-164:1, March 27, 2008.)

[8] Plaintiff argues that she qualified for the Reissue Rate, but the rate she posits as the correct one uses a Refinance Rate calculation.  (Mem. of Law in Supp. of Pl.'s Revised Mot. for Partial Summ. J., 19-20.)  By the

There is, however, a genuine dispute of material fact as to whether a misrepresentation or deceptive conduct by Old Republic led to Plaintiff's ascertainable loss. Plaintiff argues that Old Republic's provision, through Citizens, of a HUD-1 with an incorrect rate is conclusive evidence of Old Republic's deceptive conduct. Indeed, courts have recognized that the HUD-1 may be used in a scheme to defraud. *See Schwartz v. Lawyers Title Ins. Co.*, 680 F. Supp. 2d 690, 710 (E.D. Pa. 2010) (stating, in a case of mail and wire fraud, that the amount shown on the HUD-1 could be part of a scheme to misrepresent the correct amount of the premium); *Coleman v. Commonwealth Land Title Ins. Co.*, 684 F. Supp. 2d 595, 615-16 (E.D. Pa. 2010) (same); *Levine v. First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 463 (E.D. Pa. 2010) (same). Other courts, however, have found that the HUD-1 is a mere itemization of charges collected at closing and not an affirmative representation of the accuracy of the charge. *See Arthur v. Ticor Title Ins. Co. of Fla.*, 569 F.3d 154, 162 n.3 (4th Cir. 2009) (describing the title insurance charge listed on the HUD-1 as "the amount charged and collected" by title insurer, not a false statement); *Slapikas*, 298 F.R.D. at 296 (citing 12 U.S.C. § 2603(a) and 24 C.F.R. § 3500.8(b)(1) and stating, "These statutes and regulations reflect that the HUD-1's utility is in its itemization and disclosure of charges being paid"); *see also* 12 U.S.C. § 2603(a) (mandating that the HUD-1 "shall conspicuously and clearly itemize all charges imposed upon the borrower[.]"). Like the courts, a reasonable jury could find for either party regarding the function of Plaintiff's HUD-1.

Old Republic denies engaging in any deceptive conduct, instead asserting that it properly trained and audited its agents to ensure that correct rates were charged. As support, it submits various training and auditing materials, including correspondence between Old Republic and Citizens in which the former orders the latter to fix a software problem that created overcharges

---

Court's calculations, if the Basic Rate for Plaintiff's transaction was $978.75, the Reissue Rate should be 90% or $880.88.

and to provide refunds. (Dw. Edwards Decl., Exs. L-O, Doc. 189 (Citizens correspondence and reviews and agent file review protocols); Schlitte Decl., Exs. A, B, E, F, Doc. 190 (audit forms and refund checks); Swick Decl., Ex. C, "Fall 2005 Nat'l Agent Update", Doc. 190; Travis Decl., Ex. A, "Pennsylvania Basics" Training, Doc. 190.) A declaration from the president of Citizens, however, indicates that Old Republic provided minimal training or oversight for Citizens' activities and showed little concern over whether the correct rates were charged. (Prosmushkin Decl., ¶¶ 3, 5, Doc. 169.) Whether Old Republic made a misrepresentation or engaged in deceptive conduct—through the HUD-1, its lack of training, or otherwise—is a question of fact best left for the fact-finder.

Justifiable reliance is also a genuine issue of material fact. "To show justifiable reliance a plaintiff must provide evidence demonstrating how his knowledge of a mortgage loan's actual terms would have altered his decision to execute the mortgage." *Laidley v. Johnson*, Civ. Action No. 09-395, 2011 WL 2784807, at *3 (E.D. Pa. July 11, 2011). Here, Plaintiff provides evidence that she considered the title insurance rate listed on her HUD-1 in completing her refinance transaction. After inquiring about the charge,[9] Plaintiff went on to complete the transaction,

---

[9] Plaintiff's deposition testimony describes her exchange with a Citizens title agent, which took place during her closing:

Q: You said that you had questions about some of the entries on the [HUD-1].
A: Yes.
Q: Do you remember which entries you had questions about?
A: Yes.
Q: Which ones?
A: 903 was my first question . . . And the other one was 1108. I didn't know why I had to pay $978 for title insurance.
Q: And you asked the person who was at the closing—the woman who was at the closing about both of those charges?
A: Yes.
Q: . . . Did she tell you—and you said she didn't really respond to your questions about the charges, is that correct?
A: Correct. She told me that that's just the way it was and, if I didn't—especially the homeowners, it was the same way. That's the way that it was sold in the package, that you

21

paying the amount listed on her HUD-1 for title insurance. Whether this was in reliance on the HUD-1 or the title agent's representations, however, remains a question of material fact. For example, Plaintiff herself admits in her memorandum that her motivation for refinancing was "to avail themselves of historically low mortgage rates." (Mem. of Law in Supp. of Pl.'s Revised Mot. for Partial Summ. J., 19.) Whether Plaintiff exercised justifiable reliance is therefore most appropriately a question for the fact-finder. *See Cohen*, 2013 WL 842706, at *4; *see also DeArmitt*, 73 A.3d at 593 ("[J]ustifiable reliance often involves credibility determinations which are likewise for the fact-finder to resolve."). Thus, the Court denies summary judgment for both Plaintiff and Old Republic on the issue of liability under the UTPCPL catch-all provision.

2. *Summary Judgment on the RESPA Claim*

Both Plaintiff and Old Republic move for summary judgment on the issue of liability under RESPA. As discussed, Section 2607(b) of RESPA provides: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). The "settlement service" at issue here is the provision of title insurance. *Id.* § 2602(3). Plaintiff argues that the excess fee charged by Old Republic was not for services actually performed and was split with title agents in violation of Section 2607(b). Old Republic argues that Plaintiff cannot parse a single charge into portions in order to claim that the excess portion was illegal under Section 2607(b). Old Republic contends that it is not liable under RESPA because it and its agents performed settlement services in exchange for title insurance premiums.

---

had to pay in advance, and I would be refunded at a later time for what I've already paid into it.

(Mem. of Law in Supp. of Pl.'s Revised Mot. for Partial Summ. J., Ex. I, Markocki Dep. 41:3-42:10, July 31, 2008.)

The Supreme Court of the United States has noted that Section 2607(b) does not regulate excessive fees. *Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2039-40 (2012). More specifically, it rejected the theory propounded in HUD regulations that "the excess over reasonable value constitutes a 'portion' of the charge 'other than for services actually performed.'" *Id.* at 2039. This is consistent with the Third Circuit's ruling that Section 2607(b) makes no distinction between "reasonable" and "unreasonable" portions of a charge and it does not provide a cause of action for overcharges. *Santiago*, 417 F.3d at 387-88. Other circuit courts have similarly found that RESPA does not reach unreasonably high fees. *See, e.g., Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 553-54 (9th Cir. 2010) ("Section [2607(b)] cannot be read to prohibit charging fees, excessive or otherwise, when those fees are for services that were actually performed."); *Arthur*, 569 F.3d at 158 ("The statute does not prohibit, as plaintiffs would have it, charging what plaintiffs claim is too much for services that have been performed, or splitting a fee with a party that has performed services."); *Friedman v. Market Street Mortg. Corp.*, 520 F.3d 1289, 1296 (11th Cir. 2008) ("[W]e hold that [Section 2607(b)] does not govern excessive fees because it is not a price control provision."); *Hazewood v. Foundation Fin. Grp., LLC*, 551 F.3d 1223, 1225 (11th Cir. 2008) ("RESPA [Section 2607(b)] does not provide a cause of action for excessive fees—that is, charges where a service was performed, but the plaintiff feels she was overcharged by the service provider."). Accordingly, RESPA is not to be treated as a price-control statute. *See Friedman*, 520 F.3d at 1297-98 (using legislative history to demonstrate how RESPA's purpose is to regulate practices, not prices); *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49, 56-57 (2d Cir. 2004) (same).

Seeking to skirt the rule that RESPA does not govern cases of excessive fees, Plaintiff emphasizes that "this case is not merely about overcharging for title insurance." (Mem. of Law

in Supp. of Pl.'s Revised Mot. for Partial Summ. J., 44.)  Focusing on the overcharge alone, Plantiff argues that it was a charge for settlement services not actually performed and it was split between two parties in violation of Section 2607(b).  To adopt such an argument, however, requires the Court to first divide a title insurance rate into two portions, the properly charged portion and the overcharged portion.  This approach has been soundly rejected by the Supreme Court, the Third Circuit, and other circuit courts.  *See, e.g., Freeman*, 132 S. Ct. at 2039 (describing as "manifestly inconsistent with the statute" the "theory that the excess over reasonable value constitutes a 'portion' of the charge 'other than for services actually performed'"); *Hazewood*, 551 F.3d at 1225-26 ("Moreover, a RESPA plaintiff may not avoid the prohibition on excessive fee claims by asking a court to divide a fee for services actually performed into 'reasonable' and 'unreasonable' (and hence, unearned) components."); *Santiago*, 417 F.3d at 387 ("To accept Santiago's reading would require dividing charges for services provided into 'reasonable' and 'unreasonable' portions . . . Not only does Section [2607(b)] not make this distinction, but there is no other language in the body of the statute that instructs how to define the reasonable and unreasonable portions of a charge."); *Kruse*, 383 F.3d at 56 ("[N]othing in that language authorizes courts to divide a 'charge' into what they or some other person or entity deems to be its 'reasonable' and 'unreasonable' components.").  To the extent Plaintiff argues that the Reissue and Refinance Rates are definitively proper and the excess is "other than for services actually performed," Plaintiff asks this Court to implicitly render RESPA a federal price control statute for overcharges under state insurance laws.  The Court will not do so.  *See Hazewood*, 551 F.3d at 1226; *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 546 (N.D. Tex. 2009).

Liability under Section 2607(b) is triggered when a settlement service provider gives or accepts a divided fee for which no services were performed. 12 U.S.C. § 2607(b); *see Freeman*, 132 S. Ct at 2040 (requiring the fee in question to be split between at least two parties to be covered); *Santiago*, 417 F.3d at 388 (providing a cause of action for markups when a provider did not perform any settlement services). With the factual record being fully developed, it is undisputed that Old Republic and its agents performed actual settlement services by issuing title insurance to class members. Old Republic underwrote and insured class members' loan policies and title agents performed title searches, generated title commitments, cleared defects, and conducted closings. It is also undisputed that Plaintiff and the class paid the contested title insurance premiums in exchange for these services. The Court therefore concludes that Old Republic and its agents did not split a charge "other than for services actually performed" and grants summary judgment in favor of Old Republic.

### C. Citizens' Motion for Joinder or, Alternatively, for Summary Judgment

Citizens' moves the Court to "join all title agents and any other necessary entities who were involved in the re-financing [sic] transactions at issue, or, in the alternative, for dismissal of the joinder complaint for Old Republic's failure to join necessary and indispensable parties." (3d Party Def.'s Mem. in Supp. of Mot. for Joinder, 9-10, Doc. 182.) If a court determines that an absent party is "necessary" under Federal Rule of Civil Procedure 19(a), joinder must occur if "feasible." *See Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). If joinder is not feasible because it would defeat diversity of citizenship, the court considers whether the absent party is "indispensable" under Rule 19(b). *See id.* at 319. "[T]he court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

The Court denies Citizens' motion for joinder because, in light of the foregoing conclusions, the only remaining issue for trial is Plaintiff's individual claim under the UTPCPL. As to that matter, Citizens is the only "necessary" party since it alone was the title agent for Plaintiff's transaction.

## IV. CONCLUSION

For the reasons explained herein, the Court concludes that Defendant's and Third Party Defendant's Motion to Decertify Class is GRANTED as to the UTPCPL claim and DENIED as to the RESPA claim, Plaintiff's Motion for Partial Summary Judgment is DENIED, Defendant's Cross-Motion for Summary Judgment is DENIED as to the UTPCPL claim and GRANTED as to the RESPA claim, and Third Party Defendant's Motion for Joinder is DENIED. An appropriate order follows.